# MITCHELL MYERS *v.* XAVIER ARAGONA ET AL.

[No. 630, September Term, 1973.]

*Decided April 19, 1974.*

The cause was argued before ORTH, C. J., and GILBERT and LOWE, JJ.

*Hugh E. Donovan,* with whom were *Edward C. Donahue* and *Donahue & Ehrmantraut* on the brief, for appellant.

*Naji P. Maloof* for appellees.

GILBERT, J., delivered the opinion of the Court.

Mitchell L. Myers, appellant, a member of the Maryland Bar, in all probability takes sharp issue with Frederick Lawrence Knowles (1869 - 1905) who penned in *Grief and Joy* that, "Joy is a partnership." Myers's partnership with Milton Gordon [1] led to a judgment entered by Judge Perry G. Bowen, Jr. on a jury verdict in the Circuit Court for Calvert County [2] against Myers and in favor of Xavier Aragona, Marie Aragona and Martin Aragona, appellees, in the amount of $310,000. The judgment is predicated upon an amended declaration charging that Milton Gordon, a law partner of Myers's, had "within the scope of the partnership and within the scope of the agency of the said partnership, maliciously, deliberately, wantonly, and in violation of [his] fiduciary duty, misapplied [and] misappropriated" funds belonging to the appellees which had been entrusted to the law firm of Gordon and Myers. The judgment was further founded on a second count charging negligence on the part of Myers in failing to discover that "his law partner, Milton Gordon had misapplied, misappropriated, breached his fiduciary duty, and stolen the aforesaid sums which had been received by the partnership [3]. . . ."

On appeal to this Court Myers contends that:

(1) the trial judge erred in allowing an amendment to the original declaration because the amendment set forth a cause of action that was barred by the statute of limitations.

(2) the evidence failed to show that the appellant's partner, Milton Gordon, took the appellees' money.

(3) the appellants failed to establish a case of legal

---

1. *See* Gordon v. State, 5 Md. App. 291, 246 A. 2d 623 (1968), *cert. denied*, 252 Md. 730 (1969); State v. Gordon, 11 Md. App. 634, 276 A. 2d 420 (1971); Gordon v. State, 14 Md. App. 245, 286 A. 2d 833 (1972), *cert. denied*, 265 Md. 737 (1972).

2. The case was removed from Prince George's County pursuant to Md. Rule 542.

3. The exact figure for the shortage in the account is not stated although there is testimony indicating that somewhere between six hundred and eight hundred thousand dollars were missing from the account.

malpractice because they did not show the elements of the action through expert testimony.

(4) the proof did not demonstrate that Myers's negligence was the proximate cause of the appellees' loss.

The record discloses that the appellees, in 1963, retained the law firm of Gordon and Myers to perform services for the appellees in respect to real property matters. The appellees were engaged in the construction and development of real estate subdivisions. Gordon and Myers were to handle property settlements on behalf of two corporations that were owned equally by Xavier Aragona and his brother, Martin Aragona. During the period 1963 to August 1966 vast sums of money passed through the escrow account of Gordon and Myers. The sums originated from transactions involving Metropolitan Federal Savings and Loan Association, Metropolitan Financial Corporation and the appellees. Metropolitan Federal turned over to Gordon and Myers monies which were to be applied for the use of the appellees. Specifically, the monies were for the purpose of purchasing and releasing certain promissory notes made by appellees to Metropolitan Financial Corporation and which were secured by construction loans on certain real estate. As a result of the misappropriation of the funds the construction loans were not paid. Lawyers Title Insurance Corporation, which had insured the titles passed by Gordon, paid off the loans and was assigned the notes. The appellees were compelled to enter into an agreement whereby the title to the appellees' land was conveyed to Lawyers Title with an option to the appellees to repurchase under certain highly restrictive conditions. Subsequently, Lawyers Title Insurance Corporation foreclosed and the appellees lost not only the monies, but also the land.

Gordon and another lawyer, working directly under Gordon's supervision, handled the overwhelming majority of the settlements. Myers did, however, handle a few of them. The Gordon and Myers escrow account, into which the proceeds of the property settlements were deposited,

was subject to an order of withdrawal signed by Gordon or Myers or either of two associates. The law firm used a "Settlement Statement", which statement bore the legend "Gordon & Myers, Attorneys at Law".

In February of 1966 Myers became aware of the fact that Gordon's involvement with the Five Point National Bank of Miami, Florida, was subject to investigation by the United States District Attorney in Miami. According to Myers, Gordon was subsequently indicted in Florida for a violation of the Federal banking laws. One day in August, 1966, Myers observed a great deal of activity in the firm's office, and Gordon told him, "We have trouble." Shortly thereafter Myers learned that there was a deficiency in the escrow account.

Xavier and Martin Aragona testified that they were led to believe that the firm of Gordon and Myers was a partnership and that Gordon and Myers had both referred to each other as "my partner". Myers, on the other hand, says that although the letterhead stated "Law Offices Gordon & Myers" and the "Settlement Statement[s]" bear the legend "Gordon & Myers, Attorneys At Law", there was no partnership, but a "relationship".[4] Myers informed the jury that the proceeds of the firm that were received from the general practice of law (*i.e.*, the portion of the firm's business over which he exercised dominance) were divided on an equal basis between himself and Gordon. The earnings from the property settlement legal services, however, Myers said, were all retained by Gordon. Myers claims that no partnership existed and that the letterheads were printed in the manner stated in the interest of economy.

The original declaration averred in pertinent part:

> "2. Lawyer's Title Insurance Corporation, . . . a Virginia Corporation, doing business in Maryland, directed the insured, Metropolitan Federal Savings

---

4. *See* ABA Code of Professional Responsibility, Canon 2, EC 2-13, as set forth in Appendix F of the Md. Rules. The Code of Professional Responsibility was adopted in this State by Md. Rule 1230, effective October 13, 1970.

& Loan Association, Bethesda, Maryland, to pay $268,559.84, . . . to the law firm of Gordon & Myers, settlement attorneys, to purchase said notes.

3. Milton Gordon, partner in the firm of Gordon & Myers, issued a title insurance policy to Metropolitan Federal Savings & Loan Association, by which policy, in the event of default, Metropolitan Federal Savings & Loan Association would be in the position of first party in a first deed.

4. Said Milton Gordon misappropriated the funds placed in trust with the firm of Gordon & Myers and his whereabouts are presently unknown.

\* \* \*

7. That as a proximate result of the misappropriation of the funds entrusted to the firm of Gordon & Myers, plaintiffs were placed in a compromised financial position and have suffered great monetary and credit damages thereby.

8. Defendant Mitchell L. Myers, partner with Milton Gordon in the law firm of Gordon & Myers, was negligent in that he knew or should have known that which he could have discovered upon a diligent inquiry, that the firm, through Milton Gordon, was acting improperly. Defendant, occupying the trusted position of attorney, owed a duty to parties involved with matters handled by his office, to see that they were handled properly and competently. By reason of defendant's negligence, in violation of his fiduciary relationship, plaintiffs have suffered and incurred great financial losses and burdens and jeopardized their credit standing."

The original declaration was filed on July 2, 1969, and thereafter some discovery proceedings were conducted. Present counsel for appellees entered his appearance on March 15, 1971, and the original counsel withdrew. On May

5, 1972 the appellees filed a motion for leave to amend to which Myers interposed his objection. A hearing was held before Judge Bowen on June 23, 1972, and the motion for leave to amend was granted.

The amended declaration set forth four counts. A directed verdict in favor of Myers on the third and fourth counts was entered by Judge Bowen at the conclusion of the plaintiffs's case, and the appellees concede the correctness of that ruling. Count I of the amended declaration averred a law partnership known as "Gordon and Myers", that Gordon and Myers had been employed to provide professional services for the appellees, that monies were received by Gordon and Myers for the use of the appellees, that Gordon misappropriated the money, and "because of the partnership . . . Mitchell L. Myers, is liable for the wrongful acts and breach of fiduciary duty perpetrated by his law partner and the resultant injury to the plaintiffs." Count II, grounded in negligence, charged that Myers had "failed to inspect books of account and other financial records of the partnership, and further that he failed to make inquiry as to the application of the . . . funds or to familiarize himself with the transactions carried on by his law partner" and that because of Myers's negligence he did not discover that Gordon had "misappropriated" and "stolen" the monies belonging to the plaintiffs-appellees.

The original suit was filed, as we have noted, on July 2, 1969, the cause of action having arisen when the malpractice was discovered, in late July or August of 1966, *Mumford v. Staton, Whaley & Price*, 254 Md. 697, 255 A. 2d 359 (1969),[5]

---

5. In Mumford v. Staton, Whaley & Price, *supra*, the Court of Appeals said, at 714:

" . . . It would appear that in recent years the trend has been for courts, in applying limitations to professional malpractice cases, not to become too concerned as to whether the action is grounded in contract or tort, but rather to focus attention on the fact that it is the failure to perform one's professional duties with reasonable skill and diligence which gives rise to the cause of action, whether it be a negligent breach of contract or otherwise. Since such actions share the common gravamen of negligence, limitations should be applied in the same manner to all suits for professional malpractice, even though the relationship between the parties be contractual as in the case at bar."

so that patently the suit was brought within the three year statutory period. Md. Ann. Code, Art. 57, § 1. In the instant case the overriding issue is whether the amendment to the declaration stated a new cause of action vulnerable to appellant's plea of limitations. The rule is that if an amendment sets forth a new cause of action, then limitations is measured from the time of the accrual of the cause to the date the amended declaration is filed, but if the amendment does not state a new cause of action, then limitations is determined with reference to the date of the original filing. *Doughty v. Prettyman*, 219 Md. 83, 148 A. 2d 438 (1959); *Cline v. Fountain, Etc., Company*, 214 Md. 251, 134 A. 2d 304 (1957).

The case now before us turns on whether Count I of the amended declaration, grounded upon "The Uniform Partnership Act", Md. Ann. Code Art. 73A, sets forth a new cause of action that was barred by the statute of limitations. In *Brooks v. Childress*, 198 Md. 1, 81 A. 2d 47 (1951), a negligence causing death case, the Court of Appeals reversed in part because the trial judge refused to allow an amendment that sought to change the basis of the alleged liability of a father for the negligence of his seventeen year old son from agency to imputed negligence because the father had signed his son's application for a drivers license. At that time Md. Ann. Code Art. 66½, § 85 (1947 supplement),[6] provided in pertinent part:

> "(a) The application of any person under the age of eighteen (18) years for an instruction permit or operator's or chauffer's license shall be signed and verified, before a person authorized to administer oaths, by a parent or guardian of the applicant . . . . The Department [of Motor Vehicles] shall clearly set forth on the application the responsibilities assumed under this section.
>
> "(b) Any negligence of a minor under the age of eighteen (18) years when driving a motor vehicle upon a highway of this State shall be imputed to

**6.** Now Md. Ann. Code Art. 66½, § 6-107 (a) and (b).

the person who has signed the application of such minor. . . ."

During the course of the trial, counsel received information that the father of the negligent youth had signed his son's application for a drivers license. Counsel then sought to amend his declaration and to base his theory of recovery against the youth's father on the Motor Vehicle Code, Art. 66½, § 85 (b). The Court of Appeals speaking through Judge Collins said, at 13:

"The main reason given by the trial judge in refusing the further amendment was that, if it were permitted, the second amended declaration would then state an entirely different cause of action from that then declared upon. With this conclusion . . . we do not agree."

The Court then quoted extensively from *Zier v. Chesapeake Ry. Co.*, 98 Md. 35, 56 A. 385 (1903), wherein Chief Judge McSherry said for the Court, at 42-43:

"Did the amendment change the cause of action? As we have said the suit was brought under *Art. 67 of the Code,* which permits an action to be maintained to recover damages whenever the death of a person shall be caused by wrongful act, neglect or default; [7] if the act, neglect or default (had death not ensued) would have entitled the injured party to recover damages in respect thereof. Now, the original declaration though defective was founded on the alleged negligence of the defendant. The fact that the *narr* was insufficient in law — that it did not accurately and formally set forth the real cause of action — did not prevent the suit itself from being a pending suit wherein the gravamen was the negligence of the defendant. When the amendment was made precisely the same cause of action was declared on'. . . . The negligence alleged in the first

---

7. It is apparent that the semi-colon is a typographical error and should be a comma.

count was the negligence of the defendant through its agents, but was none the less the negligence of the master, though as respects a servant of the master it was not actionable. In the second count the negligence alleged was again the negligence of the master in failing to exercise due care in the selection of the fellowservants by whom the injury was inflicted. But the suit to recover for the defendant's negligence was precisely the same after the amendment had been made that it was antecedently. The *statement* of the cause of action was different but the *cause of action* itself was identical. Injury resulting in death is what occasioned the suit. The imperfect statement of the case did not cause the correct statement of it to be a different cause of action. Being the *same* cause of action the accurate statement of it in the amended declaration did not convert the original suit into a new and different suit; and therefore did not warrant the filing of any other plea of the Statute of Limitations than such as could have been interposed to the original *narr.*"

The Court concluded in *Brooks* that the amended declaration was predicated upon the father's responsibility for the negligence of his son while driving with the permission of his father, and hence the amendment was allowable.

"The Uniform Partnership Act", Md. Ann. Code Art. 73A, provides in §§ 13 through 15:

> "§ 13. *Partnership bound by partner's wrongful act.*
>
> Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

§ *14. Partnership bound by partner's breach of trust.*

The partnership is bound to make good the loss:

(a) Where one partner acting within the scope of his apparent authority receives money or property of a third person and misapplies it; and

(b) Where the partnership in the course of its business receives money or property of a third person and the money or property so received is misapplied by any partner while it is in the custody of the partnership.

§ 15. *Nature of partner's liability.*

All partners are liable:

(a) Jointly and severally for everything chargeable to the partnership under §§ 13 and 14.

(b) Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract."

Furthermore, § 16 of the same article states that when a person either orally, in writing or by his conduct represents himself, or consents to have another represent him as a partner in an existing partnership with one or more persons, "he is liable to any such person to whom any such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership. . . ." The original declaration, while hardly a model of clarity, nevertheless did set forth the existence of the law partnership known as Gordon & Myers, Gordon's misappropriation of funds belonging to the appellees, the partnership of Myers in the law firm, and a charge of negligence on the part of Myers in failing to see to it that the monies received by the firm for the use of appellees were

handled in a proper and competent manner. In the light of *Brooks v. Childress, supra,* and *Zier v. Chesapeake Ry. Co., supra,* we think that the amended declaration did no more than clarify the inartfully drawn original suit. While the statement of the cause of action adopted a different format the cause of action itself was identical. The gist of both the original action and the amended one was the liability of Myers for the misappropriation, by his partner, of funds entrusted to the partnership. Even if no actual partnership existed between Gordon and Myers, Myers is nonetheless, by virtue of his using or allowing the use of the name "Gordon & Myers, Attorneys at Law" on the "Settlement Statement[s]" and "Law Offices Gordon & Myers" on letterheads estopped from denying the existence of the partnership. Md. Ann. Code Art. 73A, § 16; *McBriety v. Phillips,* 180 Md. 569, 26 A. 2d 400 (1942); *Blaustein v. Oldfield,* 135 Md. 162, 108 A. 485 (1919). He may not now be heard to say that he was not, in fact, a partner, but that h⌐ and Gordon merely had a "relationship". In the eyes of the law, that "relationship" is as much a partnership, insofar as third parties are concerned, as if there had been formal Articles of Partnership subscribed to by both Myers and Gordon.

The trial judge directed the jury to find a verdict in favor of the appellees on count one of the declaration — the count brought under "The Uniform Partnership Act". The judge told the jury, and properly so, that as a matter of law Myers was responsible for the misappropriation of funds from the partnership account by Myers's partner, Gordon. Md. Ann. Code Art. 73A, §§ 13 - 15. During a colloquy between the court and counsel the judge told counsel that if he let the matter go to the jury on the partnership count only, and an appellate court reversed, the case would have to be retried. Therefore, the trial judge decided that out of an abundance of caution he would let the jury consider both counts of the declaration so that if he were wrong in his interpretation of the partnership law the case would, nevertheless, still have been decided on the question of the negligence, *vel non,* of Myers. The judge told the jury:

"Now I am going to ask you to bring in a special verdict to this extent. . . ; on the first count the only question you will have to answer is, what are the damages. On the second count, you will have to answer, whether your verdict is for the Plaintiffs or for the Defendant and of course you can use the same figure for damages. That doesn't mean we are going to enter two judgments, we are going to enter a single judgment on that figure, but the figure will be the same which ever count [you] apply it to."

Judge Bowen then prepared a written form which the jury completed, and when so completed read as follows:

"Verdicts –

| | | |
|---|---|---|
| Count I | Plaintiff | |
| | Damages | $310,000 |
| Count II | Plaintiff | ✓ |
| | Defendant | |
| If for Plaintiff | Damages | $310,000 " |

It is apparent from the jury's verdict that the jury was of the opinion that Myers was negligent in his dealings with the appellees. We need not, however, in this appeal, decide any question of negligence on the part of Myers. Having determined the applicability of "The Uniform Partnership Act" it is unnecessary to consider Myers's negligence, if any, because in the light of the law of partnerships any discussion relative to negligence on the part of Myers is rendered purely academic.

*Judgment affirmed.*
*Costs to be paid by appellant.*