## MACK TRUCKS, INC. *v.* LAWRENCE DELBERT WEBBER· ET AL.

[No. 193, September Term, 1975.]

*Decided December 2, 1975.*

The cause was argued before POWERS, DAVIDSON and MOORE, JJ.

*Richard H. Lerch,* with whom were *Lerch & Huesman* on the brief, for appellant.

*Patrick A. O'Doherty,* with whom was *James J. White, III,* on the brief, for appellees.

MOORE, J., delivered the opinion of the Court. POWERS, J., dissents and filed a dissenting opinion at page 278 *infra.*

This appeal arises following an award of compensatory damages in the sum of $380,000 to Lawrence Delbert Webber (plaintiff-appellee)[1] by a jury in the Circuit Court for Cecil County (Mackey, J. presiding) in an action for personal injuries against Mack Trucks, Inc. (appellant-defendant) wherein the latter conceded its negligence. Two grounds of error are claimed: (a) that Mack Trucks'

---

1. The State Accident Fund was also a party plaintiff, and is an appellant here, to recover benefits paid to Mr. Webber pursuant to the Workmen's Compensation Laws of Maryland.

motion for summary judgment based upon the three-year statute of limitations was improperly denied[2] and (b) alternatively, that it was an abuse of discretion for the trial court to deny Mack Trucks' second motion for a new trial, filed pursuant to Maryland Rule 625 b 53 days after trial, on the basis of newly discovered evidence.

Mr. Webber, then 22 years old, was employed as a driver of a tractor and trailer by Trego Brothers, Inc., a Maryland corporation, on February 26, 1970. On that date he was involved in two accidents. In the morning a broken hose in the air brake system caused him to have a low-speed collision with an automobile on U.S. Route 40 in Cecil County. In that incident the car received minor damage and appellee's truck was unscathed, as were appellee and the driver of the other vehicle. After repairing the brake system, appellee resumed operation of his tractor-trailer. That afternoon, while driving on Interstate Route 95 in Harford County with a load of approximately seventeen tons of rock salt, an aluminum spring bracket cap on the tractor broke causing disengagement of the spring suspension system, resulting in complete loss of control by the driver. While traversing approximately one-half mile of a gentle downhill grade the truck moved inexorably from the right-hand northbound lane through the passing lane, onto the grassy median, onto the southbound, or "wrong" lanes, and finally into a ditch beyond the southbound lanes. The tractor-trailer overturned and caught fire. Appellee was trapped inside until rescued by two passing truck drivers. He sustained serious injuries.[3]

On January 22, 1973, a little more than one month prior to the end of the three-year period of limitations, Mr. Webber brought an action against Mack Trucks, Inc. as the

2. It was stipulated at the outset of the trial that the admission of negligence would not constitute a waiver of appellant's right to assert on appeal its defense of limitations.

3. In opening statement, counsel for Mack Trucks stated that "the evidence will show that this is not a nothing case; it's a serious case." He said that appellee "was seriously injured" and also told the jury their award "will be a substantial amount."

manufacturer of the tractor, alleging negligence, breach of warranty, and strict liability. Plaintiff-appellee incorrectly recited in the declaration that the accident in which he was injured had occurred at the situs of the minor morning accident in Cecil County — and also named as a second party defendant the driver of the passenger vehicle which had been involved in the earlier mishap. The facts alleged were that defendant had manufactured and sold the tractor-trailer and that

> "suddenly and without warning *a mechanical or structural defect or failure on the aforesaid tractor caused the Plaintiff to lose control* of the aforesaid tractor and dump trailer; and as a direct result the Plaintiff was involved in an accident with another vehicle . . . in which accident the Plaintiff was injured and damaged." (Emphasis added.)

Mack Trucks filed general issue pleas to the negligence and warranty counts and served interrogatories on plaintiff on March 15, 1973.[4] Interrogatory number 5 was: "Give a concise statement of the facts relied upon by you to support your claim that the defendant was negligent." On March 29, plaintiff responded to the interrogatories and his answer to number 5 was:

> "A spring bracket cap of a tractor/dump-trailer that was manufactured by the defendant broke causing disengagement of the spring suspension system of the vehicle operated by the plaintiff which resulted in the upset and crash of the vehicle. The cap broke because of a mechanical deficiency in the cap. The mechanical deficiency was caused by the defendant, its agent, or employees."

Another answer stated that the accident had been investigated by Trooper Daniel H. Mahan. (It was eventually

---

4. A demurrer to the strict liability count was sustained without leave to amend.

discovered that Officer Mahan had investigated the morning accident but a different officer had investigated the serious afternoon accident in which Mr. Webber was injured.)

On January 9, 1974, with the consent of appellees, Mack Trucks, Inc. filed a "Third Party Complaint" pursuant to Maryland Rule 315. b against Arrow Aluminum Castings Company, an Ohio corporation, the manufacturer of the defective aluminum spring bracket cap.

On May 30, 1974, Mack Trucks deposed Mr. Webber. On that occasion it became clear that Mr. Webber had been involved in two accidents on the same day, in two different counties, and that the site of the accident recited in the declaration was not the site at which he had been injured. (As previously stated, no personal injuries and no significant property damage were sustained in the morning occurrence in Cecil County.)

Appellant thereupon moved for summary judgment on the ground that appellee had not been injured or damaged in an accident on U. S. Route 40 in Cecil County. Appellee's counsel, James J. White, III, Esq., interposed an answer to the motion for summary judgment wherein it was stated that the allegation in the declaration that Mr. Webber's injury was sustained at the intersection of U.S. Route 40 and Maryland Route 272 was inadvertent and that leave to amend the declaration would be requested. Annexed to the answer was an affidavit of Mr. White in which it was averred that he was unaware that Mr. Webber had been involved in two accidents until May 30, 1974.[5]

Judge Mackey denied defendant's motion for summary judgment and granted plaintiff leave to amend. On September 3, 1974, plaintiff filed an amended declaration which omitted the cause of action alleged against the original co-defendant and correctly recited the location of

---

5. It was also stated that at the initial interview by counsel with Mr. Webber after the accident, his recollection of the facts was "foggy and vague" and that a motor vehicle accident report thereafter requested by counsel stated that the accident occurred at the intersection of U.S. Route 40 and Maryland Route 272.

the accident which caused his injuries. The negligence allegations were identical to those contained in the original declaration — "that a mechanical or structural defect or failure ... caused the plaintiff to lose control of the aforesaid tractor...."

On September 9, 1974, appellant filed general issue pleas to the counts sounding in negligence and breach of warranty,[6] and also specially pleaded that the action was barred by limitations. The special plea was based on Mack Trucks' position that the amended declaration stated a new cause of action and therefore was not timely. It appears that the trial court ordered the submission of memoranda on the issue of limitations and the record discloses that a hearing thereon was held in open court on November 15, 1974. On December 5, 1974, the court filed an "Opinion in Support of Denial of Plea of Limitations" and the case was set in for trial on January 27, 1975.[7] The trial was brief. The only testimony received was that of Webber, his own examining physician, Dr. Eli Lippman, an orthopedic surgeon, and the State Trooper who investigated the afternoon accident. Hospital records and medical bills were stipulated, as was actuarial testimony and the report of Mack Trucks' examining orthopedic surgeon, Dr. G. Edward Reahl, Jr., dated January 22, 1975. The jury's verdict in favor of appellees was returned at 5:10 p.m. on January 27, 1975.

Appellant moved for a new trial on the grounds that the award of $380,000 was excessive and that the trial court erred in its instructions to the jury. After a hearing on February 25, 1975 Judge Mackey denied the motion.

On March 19, 1975, Mack Trucks again moved for a new trial. On this occasion the motion was pursuant to Maryland Rule 625 b claiming newly discovered evidence. As a result of an anonymous telephone call to appellant's counsel after the trial, appellant charged that it had obtained previously

---

6. A demurrer to a strict liability count was again sustained without leave to amend.

7. On the day of trial the court granted a motion by Mack Trucks filed on January 7, 1975 to dismiss its third-party claim against Arrow Aluminum Castings Company.

unavailable evidence reflecting a greater earning capacity on plaintiff's part than had been before the court at trial. At a hearing on March 27, 1975 the motion was denied in a ruling from the bench. The trial court held that appellant, through the exercise of due diligence prior to and during trial, should have been aware of Webber's income-producing activities since the date of the accident.

Mack Trucks, Inc., raises two contentions here. It argues that its plea of limitations should have barred plaintiff's suit because the amended declaration stated a new cause of action. The second point appellant makes is that if the claim was not barred by limitations, a new trial should have been ordered.

## I

## THE STATUTE OF LIMITATIONS

The law is clear that if an amended declaration sets out a new cause of action, the time period for limitations purposes is measured from the date on which the cause of action accrued to the date the amended pleading is filed. If, however, no new cause is set out by the amendment then the doctrine of relation back applies and the question of limitations is determined with reference to the date of the original filing. *Crowe v. Houseworth,* 272 Md. 481, 325 A. 2d 592 (1974); *Doughty v. Prettyman,* 219 Md. 83, 148 A. 2d 438 (1959); *Cline v. Fountain Rock Lime and Brick Co., Inc.,* 214 Md. 251, 134 A. 2d 304 (1957); *Myers v. Aragona,* 21 Md. App. 45, 318 A. 2d 263 (1974).

As Judge Davidson noted in *Davis v. Frederick County Board of Commissioners,* 25 Md. App. 68, 69, 334 A. 2d 165 (1975), Mr. Justice Cardozo declared in *United States v. Memphis Cotton Oil Co.,* 288 U. S. 62, 67 (1933) that:

> "A 'cause of action' may mean one thing for one purpose and something different for another. It may mean one thing when the question is whether it is good upon demurrer; and something different when there is a question of the amendment of a

pleading or the application of the principle of *res judicata.*"

Here we must determine what a "cause of action" is in the context of an amendment to a declaration. We note, at the outset, that in *Crowe v. Houseworth, supra,* where the Court of Appeals held that the addition of a new party plaintiff will survive a plea of limitations, Judge Singley stated:

> "As regards amendment of the averments of a declaration, the Court has applied the doctrine of relation back with a considerable measure of liberality." 272 Md. p. 487.

Later on, Judge Singley adopted the view of Mr. Justice Holmes speaking for the Supreme Court in *New York Central & H.R.R. Co. v. Kinney,* 260 U. S. 340, 346 (1922), cited with approval in *Doughty v. Prettyman, supra:*

> ". . . when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it *because of specified conduct,* the reasons for the statute of limitations do not exist, and we are of the opinion that a liberal rule should be applied." (Emphasis added.)

In Maryland, *Zier v. Chesapeake Beach R. Co.,* 98 Md. 35, 56 A. 385 (1903) remains the leading case concerning the amendment — new cause of action question. *See, e.g., Brooks v. Childress,* 198 Md. 1, 81 A. 2d 47 (1951); *State v. Arundel Park Corp.,* 218 Md. 484, 147 A. 2d 427 (1959); and *Myers v. Aragona, supra.*

In *Zier* the widow of a railway fireman brought an action in negligence against his employer. She alleged that the negligence of either the defendant's officials or its employees caused the fatal injuries sustained by her husband. In order to avoid a certain nonsuit, based on the fellow-servant rule, she amended one count of her declaration to charge defendant with negligence in selecting fellow employees of

the decedent.[8] Such amendment was made *after* the period of limitations had expired. The learned Chief Judge McSherry, writing for the Court, discussed in detail the rationale for permitting certain amendments even after the expiration of the statutorily prescribed period of limitations:

> " The institution of a suit arrests the running of the Statute of Limitations, and the general rule is that where the period of limitations has not elapsed before the suit was brought a mere amendment of the declaration, *when the cause of action remains the same,* will not warrant the filing of a plea of limitations even though the statutory period has intervened between the time when the cause of action accrued and the date of making the amendment. The reason for this rule is that the bringing of the suit stops the running of the statute and consequently so long as the suit proceeds for the *same* cause of action the bar of the statute cannot attach. When, however, by amendment the *cause of action* is changed, a new suit is begun when the amendment is made, and if between the accruing of *that* cause of action and the date of the amendment, which *for the first time* invokes that cause of action, the period of limitations has supervened, then the plea may be interposed to that *new* suit." [Emphasis in original.] 98 Md. at 40-41.

He then proceeded to explain why the plaintiff's amendment in *Zier* did not state a new cause of action:

> "The fact that the *narr* was insufficient in law — that it did not accurately and formally set forth the real cause of action — did not prevent the suit itself from being a pending suit wherein the gravamen

---

8. Under then existing law in Maryland, a servant who was injured by the negligence of a fellow-servant had no right of action against the common master "unless the latter had been guilty himself of negligence in selecting an incompetent fellow-servant who by his carelessness caused the injury; or in retaining him in service after his incompetency became known or ought to have been known by the master." *Id.* at p. 39.

was the negligence of the defendant. When the amendment was made precisely the same cause of action was declared on. It is true it was imperfectly stated in the first count, but in the second it was correctly set forth. . . . [T]he suit to recover for the defendant's negligence was precisely the same after the amendment had been made that it was antecedently. The *statement* of the cause of action was different but the *cause of action* itself was identical. Injury resulting in death is what occasioned the suit. The imperfect statement of the case did not cause the correct statement of it to be a different cause of action. Being the *same* cause of action the accurate statement of it in the amended declaration did not convert the original suit into a new and different suit; and therefore did not warrant the filing of any other plea of the Statute of Limitations than such as could have been interposed to the original *narr*." [Emphasis in original.] 98 Md. at 42, 43.

We have quoted at such length because Judge McSherry's language is so readily applicable to the instant case. Indeed, plaintiff here has, if anything, a stronger cause for his amendment than did Mrs. Zier, because Mr. Webber's original declaration was not clearly insufficient in law. Md. Rule 301 c provides, in pertinent part, that "it shall not be necessary to state time or place in a pleading except where time or place forms a part of the cause of action or ground of defense." The discussion in 2 Poe, *Pleading and Practice* (6th ed., 1970) § 556 is quite instructive. The only instances there mentioned where location is of the essence and therefore must be pleaded are actions in ejectment or dower. In the instant case the allegation in both the original and amended declarations was that Mack Trucks was liable in negligence for plaintiff's injuries — such liability being predicated on the installation of a defective spring bracket cap on the truck he was driving. That Mack Trucks was aware of the essential nature of plaintiff's cause of action was amply manifested

by its early pursuit of a third-party complaint against Arrow Aluminum Castings Company, the manufacturer of the defective part. Since the location of an accident is not an element of the tort of negligence, and since Md. Rule 301 c provides that a pleading is sufficient if it "contains a clear statement of the facts necessary to constitute a cause of action . . .," and since the negligence alleged was in no way changed, we hold that the amended declaration here did not set out a new cause of action and therefore was not barred by limitations. The amended declaration did no more than correct what was an unfortunate but not fatal mistake in the original.

The dissenting opinion in this case regards the appearance of similarity between the original and amended declarations as "superficial" and "in reality fallacious." These characterizations are based upon the truism that "[t]wo causes of action which one person may have against another do not become the same because they arise from events which happen on the same day. . . ." Such a proposition is relevant only if we assume that the first declaration was based upon the Cecil County brake failure rather than upon the Harford County spring bracket cap failure. That any such assumption is unfounded may be seen by including in the chronology of the case two significant events omitted in the dissent.

In his answer to Mack Trucks' interrogation Webber stated, on March 29, 1973, that his claim that Mack Trucks was negligent was based on the breaking of the spring bracket cap. This response obviously caused Mack Trucks to implead the manufacturer of the spring bracket cap on January 9, 1974.

When these events are included in the chronology it becomes clear that Webber's first declaration, however inartful, was based upon the Harford County spring bracket cap accident and that Mack Trucks had notice thereof. We agree with the dissent that the cause of action which accrued as a result of the morning accident was a "poor one." We do not, however, see how the complete chronology of the case

permits the inference, made in the dissent, that the "morning" cause of action was asserted in the original declaration. We find that the present case falls squarely within the ambit of *Zier, supra,* in that "the suit itself [was] a pending suit wherein the gravamen was the negligence of the defendant." To paraphrase the language of Mr. Justice Holmes in *Kinney, supra,* Mack Trucks had notice from the beginning that Webber's claim against it was because of its conduct with respect to the installation of a faulty spring bracket cap and therefore the reasons for the statute of limitations do not exist.

Defendant-appellant relies on *Cline v. Fountain Rock, supra,* for an explication of Maryland law concerning whether or not an amendment sets out a new cause of action. Such reliance is appropriate. *See, Crowe v. Houseworth, supra; Hall v. Barlow,* 260 Md. 327, 334, 272 A. 2d 386 (1971); *Eastern Air Lines, Inc. v. Phoenix Savings and Loan Assoc., Inc.,* 239 Md. 195, 201, 210 A. 2d 515 (1965); *Glens Falls Insurance Co. v. Baltimore County, Maryland,* 230 Md. 524, 528, 187 A. 2d 875 (1963). Careful scrutiny of Chief Judge Brune's scholarly opinion in *Cline,* however, does not bear out appellant's contentions that the instant amendment set out a new cause of action. In that case the original declaration asserted an oral lease but the amendment asserted the lease and an oral joint venture agreement and was therefore held to have set out a new cause of action. The Court refused to apply the doctrine of relation back.

The rule in *Cline* may be found in the penultimate paragraph of the opinion. It is, simply put, that if evidence which would support the amended declaration would support the original, *i.e.,* if judgment for plaintiff on the amended declaration would bar suit on the original, the amendment does not set out a new cause of action and is not subject to successful attack by way of limitations.

Post-*Cline* cases holding that a new cause of action was not alleged in an amended declaration include *State v. Arundel Park Corp., supra* and *Doughty v. Prettyman,*

*supra,* each of which was discussed by the Court of Appeals in *Crowe v. Houseworth, supra,* decided in September, 1974. In *Arundel Park* an amendment was necessary in order to proceed in a death action for negligence against an otherwise immune eleemosynary institution. The defendants filed special pleas asserting their immunity from liability in tort. Plaintiff responded with an amended declaration, alleging that the defendants were insured and estopped by statute from pleading charitable immunity. The Court of Appeals found no new cause of action and no bar of limitations since "the theory of the action has always been and still is based upon negligence . . . and the only change is in the allegation which, in effect anticipates a defense raised by the pleas of immunity. . . ." 218 Md. at 489. Again, in the instant case, the theory of the action has continuously been Mack Trucks' negligence. Plaintiff's amended declaration in no way changed this. The specific allegations of negligence were identical in each pleading.

*Doughty,* decided in 1959, the same year as *Arundel Park,* was a negligence case in which the Virginia guest statute, then § 8-646.1 of the 1950 Code of Virginia, applied and required proof of gross negligence to permit guest motor vehicle passengers to recover. The original declaration alleged negligence and the pertinent amendment alleged gross negligence with respect to a guest passenger. The Court of Appeals cited, *inter alia, Arundel Park* and *Brooks v. Childress, supra,* and distinguished *Cline* in its determination that the original and amended causes of action were essentially the same and that no plea of limitations could successfully be interposed. With respect to *Cline,* the Court stated:

> "In the *Cline* case, the causes of action set up in the declaration and in the amended declaration were essentially different; as the Court pointed out, it could not be said that the evidence which would support the one would support the other or that a judgment in favor of Cline on one would preclude his suit on the other. See Comment in 18 Md. L.

Rev. 161. In the present case, however, the alternative causes of action set up in the two counts of the original declaration and in the third amended declaration are essentially the same. *Evidence of the negligence of Johnson, the driver of the truck, would have supported the first count in its original or its amended form, and evidence that the truck was defective and that the appellee's decedent knew or should have known of the defect would have supported the second count and all its variations.* 219 Md. at 91-92. (Emphasis added.)

Appellant also relies upon the case of *Talbott v. Gegenheimer,* 237 Md. 62, 205 A. 2d 285 (1964) which held that relation back will not be permitted when a new defendant is added. There, a passenger sued both drivers. After the lapse of three years, an amended declaration was filed wherein the identity of one of the drivers was changed — a wife was named as driver and her husband (one of the original defendants) was alleged to be the owner. A motion for summary judgment was granted as to the wife. The Court held that the motion was properly granted. Chief Judge Henderson, writing for the Court and without adverting to *Cline, supra,* pointed out that this was not a case of mere misnomer, citing *Western Union v. State,* 82 Md. 293, 33 A. 763 (1896), nor a change in the theory of liability against the same party, citing *Doughty, Brooks* and *Zier, supra:*

"... Mrs. Gegenheimer is obviously an entirely new party, who was not charged with liability on any theory in the first declaration. We think her plea of limitations is therefore good." 237 Md. 63, 64.

We consider *Talbott* entirely inapposite, on its facts, to the instant case.[9] We find that the amended declaration was not barred by limitations.

___

**9.** Recent cases from other jurisdictions reflect determinations consistent with Maryland law and with our holding here: Material Handling Industries, Inc. v. Eaton Corp., 391 F. Supp. 977 (E.D. Va. 1975) (originally:

## II

## DENIAL OF APPELLANT'S SECOND MOTION FOR A NEW TRIAL

It is fundamental that the grant or refusal of a new trial is within the sound discretion of the trial court and is not reversible on appeal, at least when the trial court fairly exercised its discretion, and except for the most compelling reasons. Furthermore, when the motion is made on the grounds of newly discovered evidence, that evidence must not have been "previously discoverable by due diligence." *Washington, Baltimore & Annapolis R. Co. v. Kimmey*, 141 Md. 243, 118 A. 648 (1922); *The Maryland Coal & Realty Company v. Eckhart*, 25 Md. App. 605, 337 A. 2d 150 (1975); *Angell v. Just*, 22 Md. App. 43, 321 A. 2d 830 (1974).

Mack Trucks filed a motion for a new trial within the three-day period provided in Rule 567. The motion was heard in open court on February 25, 1975 and was denied. On the same date judgment absolute was entered in favor of Mr. Webber and the State Accident Fund against Mack Trucks, Inc. in the amount of $380,000.

On March 19, 1975 a second motion for a new trial was filed.[10] This motion was based upon alleged newly discovered evidence pursuant to Maryland Rule 625 b, which provides as follows:

"b. *Newly Discovered Evidence.*

The court may, pursuant to a motion filed within

---

attack on validity of territorial restrictions and tying agreement; as amended: conspiracy in violation of the Sherman Act, 15 U.S.C. § 1; Pendrell v. Chatham College, 386 F. Supp. 341 (D. Pa. 1974) (originally: wrongful discharge; as amended: defamation and trespass); In re Poulous' Estate, 229 N.W.2d 721 (Iowa, 1975) (originally: will attacked on grounds of undue influence and lack of testamentary capacity; as amended: will forged); Price v. J. C. Penney Co., 216 S.E.2d 154 (N.C. App. 1975) (originally: wrongful discharge; as amended: slander). In all of these cases: the change brought about by the amendment substantially changed the cause of action. In none of them could it be said that evidence in support of the amended declaration would necessarily support the original suit. In the instant case the evidence concerning defendant's negligence would have been the same under either declaration. (No evidence was adduced since defendant admitted liability.)

10. The appeal in this case was taken from the judgment entered on February 25, 1975 and from the denial of the motion for a new trial.

the time set forth in section a of this Rule, grant a new trial or other appropriate relief on the ground of newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under section a of Rule 567 (New Trial)."

The motion claimed that in answers to interrogatories, in deposition, and at the trial of the case, Mr. Webber testified that he was (1) unable to engage in any but occasional light physical activity and (2) that except for unsuccessful efforts at light work, he had not been employed since the accident on February 26, 1970. The motion further represented to the court that "as a result of an anonymous call following the trial of the case" appellant had come into possession of newly discovered evidence to show (a) that appellee was employed at H & H Auto Sales for a period of almost a year from November 1973 to September 1974; and (b) that appellee had also been employed as a vending machine repairman "for a period of a couple of months" for the Complete Coin Vending Corporation of Chesapeake, Maryland. Attached to the motion were affidavits of Bonny Ann Jackson, age 19, of Elkton, Maryland, who had dated Mr. Webber from November 1973 until February 1974; Sara Lee Frederick, age 26, a cousin of Bonny Ann Jackson, and a waitress at Rose's Diner, Route 40, Elkton; and Nellie Lee Meadows, age 51, of Elkton, Maryland, a former waitress at Rose's Diner.

A hearing on the motion was held on March 27, 1975 when the court heard ten witnesses. The appellant called the three affiants and the presidents of each of the companies by which appellee had allegedly been employed. The appellee's witnesses, in addition to Webber himself, included a claims supervisor for Travelers Insurance Company who had been responsible for investigating Mr. Webber's claim, and a private investigator whose firm had been engaged on behalf of appellant on or about February 1, 1975, after receipt of the anonymous telephone call. The number of pages of transcript exceeded that of the trial itself.

The charge with respect to alleged employment by the Complete Coin Vending Corporation of Chesapeake, Maryland was withdrawn when the testimony at the hearing on the motion developed only that the company rented appellee's pickup truck for a short period of time for $50 per week ending in November 1974 and that he had merely been seen at Rose's Diner in the presence of vending machine company employees.

With respect to H & H Auto Sales the testimony of Fred Harry Letner, Sr., president of the organization, disclosed that it was a used car business and did very little mechanical work. During a 16-month period ending in April 1974, Mr. Webber, and on occasion Mrs. Webber, accompanied Mr. Letner to used car auctions at Felton, Delaware, Bordentown, New Jersey, Bel Air, Maryland, and Manheim, Pennsylvania on Tuesdays, Wednesdays, Thursdays and Fridays, respectively. They would drive passenger cars to or from these auctions. The compensation which Mr. Webber, and on occasion Mrs. Webber, received was $5 per trip. Letner testified that appellee was not an employee but rather, "contract labor." The court found that the average compensation per month to Mr. Webber over the 16-month period was only $80. Mr. Webber testified that he had to stop this activity: "Because it was too hard on me. It was just too much to have to drive all of that ways now, for $5 and it was just too much on my back and legs and stuff. So that is really why I stopped. It was just too much on me."

During the course of the hearing on the motion, Judge Mackey summoned the court reporter, Kathleen W. Martenis, and asked her to read, from her notes of the trial, Mr. Webber's testimony concerning any employment after the accident. At the trial he first testified that upon the advice of one of his doctors he attempted to resume work as a truck driver but collapsed in the effort; and that he had pumped gas at a service station for about three weeks and had to give that up. He was then asked on direct examination whether he had tried any other job:

"Q. Now, have you tried any other job?

A. Yes, I tried working at a car lot.

Q. Doing what?

A. Car salesman, handyman, *go to sales and drive cars back and forth and stuff like that* and it just, I just can't do it, because when you're in pain you can't perform to your fullest ability and the man's not going to hire, he's not going to hire me. And I only worked a couple days a week. He ain't going to do that." (Emphasis added.)

Q. Were you on commission there at the used car lot?

A. Yeah, $25.00 a car is what I got.

Q. Well, can you tell the Jury, were you able to make anything there?

A. Yeah, I made about $50.00 a week. I managed to sell a couple cars. Not $50.00 every week. Some weeks I didn't take home nothing."

Cross-examination of Mr. Webber on this subject was confined to testimony given by him in a deposition taken on May 30, 1974:

"Q. And you indicated also when we asked you about what you did with your time, you said sometimes you drive up to one of the filling stations and sit around and talk to your friends up there?

A. Yes, *and the car lot. I was going up once in a while and going with them to the car sales.*

Q. But you do drive the car and you have all along?

A. Oh, yes." (Emphasis supplied.)

At the hearing on the second motion for a new trial Mr. Webber was *again* cross-examined on the basis of his deposition. Thus, counsel for Mack Trucks, Inc. stated:

"Q. . . . I am going to read the deposition and ask you whether I asked you these questions and answers as given in May of 74.

274

'And how long'.— line 4 — !How long did you work at the car lot? A. Couple of weeks. And then what? What was the next time? Answer: I haven't worked. Question: Hasn't been a next time? Answer: No. Question: You tell me since the accident, tell me if I am wrong, you went back to work after the first operation, 1, 2-1/2 days; and then another time you worked for about two weeks, on a car lot? Answer: About 2 or 3 weeks, yes, sir; that is it. You haven't worked for anybody else since this accident? Answer: No. Yes, sir. Is that correct? Answer: That is right'.

Did the stenographer accurately record the questions and answers I have just read when you came to my office on May of '74? Those are the answers you gave?

A. Yes, sir.

Q. Is that correct?

A. Yes, sir."

In his oral opinion from the bench on the day of the hearing on the motion for a new trial Judge Mackey found with respect to Mr. Webber's trial testimony:

"... [H]e stated he worked two days a week and that he made $25 a trip or $50 a week. This was not so every week, but it would probably be a fair average, as I understood the testimony. *The Plaintiff at the trial before the Jury did not put any limit on the number of weeks that he worked, nor the time that he worked. And he significantly, so far as we are able to ascertain from our collective recall and the stenographer looking at the notes, he was not crossed on this point.*" (Emphasis supplied.)

It is apparent that when appellee was deposed his testimony was somewhat cryptic in describing his activities with 'H & H Auto Sales. We reject, as in effect did the trial court, appellant's hyperbolic charge in its brief that his was

"the most blatant perjured testimony that the mind of man could invent." It is, in any event, his testimony *at trial* that really counted and we quite agree with Judge Mackey's statement above quoted that at trial Mr. Webber was "significantly" not cross-examined. In this respect we find quite cogent the following analysis by the trial court in his opinion after the hearing on the motion:

"The question, it seems to the Court, is first of all whether due diligence was exercised and, if it were, could this matter of his earnings of some $80 a month over a 16 month period have been discovered. It seems to the Court that in light of the testimony of the Plaintiff at the trial, if it were not discoverable before, that a cross examination would have elicited answers as to the length of time that he worked, and had those answers proven false, the Movant then might have a different standing before the Court today on its Motion for New Trial. This cross examination was not conducted. The answers were not elicited, and it can not be said that the fact-finder was misled by the testimony of the Plaintiff, that he worked 2 days a week, making $25 to $50 a week. He simply did not say how long he worked. He did say that the time came that he had to quit and it does seem to the Court that it was up to the Defense Counsel to develop the length of time that he worked, if he is going to have standing here today to contend that with due diligence he could not have discovered this fact. It is futile to try to speculate what the Plaintiff's answer would have been had he been asked these questions.

The Court, therefore, concludes that the Jury was not misled and that the ingredients were there for a total revelation to the Jury, had the Defendant chosen to avail himself of his opportunity."

We observe also that the trial court's opinion finds as a fact "that no investigation was made of this case until November, 1974 or some 60 days before trial. . . . It was

November, 1974 that the insurer undertook an investigation other than the perfunctory examination of the police report and reading of the suit papers." (The declaration was filed on January 22, 1973.)

This finding is fully supported in the testimony adduced by appellee at the hearing on the motion. Richard Bannister, the Travelers Insurance Company's claim supervisor, ultimately conceded that "we did not check with the employers prior to the verdict" and that *after* the verdict the insurance company employed Interstate Bureau of Investigation, a private investigating firm, to do so. Earlier, Bannister testified that during the period prior to the ruling by the court that the statute of limitations could not be interposed,

"Well, now we went through the basic gathering of all the special damages and everything else to find out exactly what we were faced with, and then as far as a further investigation and as for an actual field work, there really was no field work until November of — approximately November of '74."

Mr. Bannister's testimony also revealed that in November, 1974 the company had employed a different investigating organization, the Wackenhut Corporation. The following colloquy ensued:

"Q. Now, did you give him any instructions as to what he was supposed to do?

A. We just wanted to make sure that Mr. Webber wasn't working because we had, in May of '74, went into the deposition — I forget exactly when I received the deposition — but I received Mr. Lerch's report of the deposition. But the deposition was in May and sometime shortly thereafter we learned that he, Mr. Webber, wasn't working. This case was, as you know, a very complicated case with a lot of other ramifications in it in addition to the injuries that are alleged. We thought that it

would be a good idea, we thought, to see if Mr. Webber was telling us the truth. We had no reason to doubt him.

Q. All right. Wait a minute. You had Answers to Interrogatories and you had his deposition. But you had already had that in the file. You had his deposition testimony and his Answers to Interrogatories?

A. With no reason to believe that he wasn't telling us the truth.

Q. With no reason to believe that he wasn't telling you the truth, so why did you do an investigation?

A. Because of the extent of the claim.

Q. You wanted to be sure what he was telling you was the truth. Right?

A. Yes.

Q. And it was good claim procedure not to rely on what a plaintiff tells you, but to go out and check out the bona fideness of what he said?

\* \* \*

A. I would have to say that is probably correct.

Q. And in the course of your duties as a supervisor and your training, you certainly are instructed, are you not, that in any kind of a substantial case you always verify claimed loss of employment or claimed injuries?

A. Yes."

Based upon this record, the ultimate conclusion of the trial court was that due diligence had not been exercised either prior to trial or during the trial itself and that the motion for a new trial must fail. We find no error in this conclusion nor can we accede to the importunities of appellant that the decided cases of the Court of Appeals and of this Court, including *Angell v. Just, supra,* compel a contrary result.

Furthermore, another constituent element on the question of newly or after discovered evidence is that it must be such, and of such nature that, on a new trial, the newly discovered evidence would produce a different result. *Angell v. Just, supra,* 22 Md. App. at p. 54. Here, the trial court was not persuaded that the "Movant [appellant] has shown that the Plaintiff [appellee] is chargeable with any misleading of the fact finder to the extent that the verdict would have been other than that rendered or that the amount of damages would have been other than that found by the jury." There is substantial support for this conclusion.

The jury knew that plaintiff was capable of driving a car and that he had gone to the car auctions in Maryland, Pennsylvania, Delaware and New Jersey. There was testimony by plaintiff on direct examination that he had made as much as $50 per week on occasion in the used car business. Dr. Reahl, Mack Trucks' examining orthopedic surgeon, said in his report, "I don't think he's capable of doing heavy work or being a truck driver but I do think he should be able to be rehabilitated to some form of light work." Dr. Lippman, appellee's physician, characterized Dr. Reahl's report as "optimistic." In any event the jury returned its verdict with the awareness that the permanently injured plaintiff had the capacity to earn some limited income.

We conclude that the trial court's findings on the evidence were not "clearly erroneous," Md. Rule 1086, and that the denial of appellant's motion for a new trial was not an abuse of discretion.

> *Judgment affirmed; costs to be*
> *paid by appellant.*

*Powers, J., dissenting:*

The majority opinion rules on two issues. I concur with the holding that the trial judge did not abuse his discretion in denying the second motion for a new trial, which Mack filed under Maryland Rule 625 b claiming newly discovered evidence. But I must dissent from the holding that the

amended declaration did not state a new cause of action, but merely restated the same cause of action declared upon in the original declaration.

Obviously, the significance of the issue is that if the amended declaration stated the same cause of action as the original, it related back to the time the original declaration was filed, and was not barred by the statute of limitations. If the cause of action sued on in the amended declaration was not the same, it was filed too late, and was barred by limitations.

The chronology of this case, as shown by parts of the record which I consider relevant to the issue, is this:

22 January 1973 — Declaration filed by Lawrence Delbert Webber and State Accident Fund, as plaintiffs, against Mack Trucks, Inc. and William Ross Shire, Sr., as defendants.

15 March 1973 — Responsive pleadings filed by Mack.

26 June 1974 — Motion for summary judgment filed by Mack on the ground that there was no genuine dispute that the accident sued on was not the responsibility of Mack and that, in any event, the plaintiff was not injured or damaged in the accident. The motion relied upon facts developed in Webber's deposition taken on 30 May 1974.

11 July 1974 — Answer by the plaintiffs to Mack's motion for summary judgment. In the answer it was asserted that Webber was injured on 26 February 1970 as a result of defendant's negligence, but that the injury occurred at a different place from that alleged in the declaration. The answer went on to say that the allegation in the declaration stating where the injury occurred was made inadvertently, and that plaintiffs intended to move for leave to amend the declaration.

19 August 1974 — Hearing on Mack's motion for summary judgment. Plaintiffs' oral motion for

leave to file an amended declaration was granted,· and the motion for summary judgment was denied.

3 September 1974 — Amended declaration filed. Plaintiffs were the same as in the original declaration. Mack Trucks, Inc. was the only defendant.

9 September 1974 — Responsive pleadings, including a plea of limitations, filed by Mack.

9 October 1974 — "Memorandum in Support of Plaintiffs' Amended Declaration" filed.

23 October 1974 — "Reply Memorandum" filed.

15 November 1974 — Docket entry, "Hearing" *·* * "Plea of Limitation denied".

5 December 1974 — "Opinion In Support Of Denial Of Plea Of Limitations" filed.

The hearing presumably was confined to argument of counsel, since there is no transcript of it. In counsel's memoranda and the court's ruling it appears that by common acquiescence the court proceeded as on a motion for a partial summary judgment, on the issue of limitations. The issue, submitted to the court upon the entire record, involved no dispute of fact, but turned solely on whether the cause of action sued upon in the amended declaration was the same cause of action sued upon in the original declaration.

Whether the amendment stated the same cause of action or a new cause of action is irrelevant to the right to amend. The trial court properly permitted the amendment. The leave to amend in no way involved a decision by the court whether the amended declaration merely restated the same cause of action originally sued upon or whether it stated a new cause of action. But for the intervening expiration of the period of limitations, the question would be of no significance. Once the amended declaration was filed, more than 4 1/2 years after the cause or causes of action arose, the plea of limitations to the amended declaration raised the question.

Facts in the record show that Webber was employed as a

truck driver, and on 26 February 1970 he was driving a tractor-trailer owned by his employer. The tractor was a 1965 model manufactured by Mack Trucks, Inc. On that day, Webber was involved in two entirely separate and unrelated accidents.

The first accident happened at 8:55 A.M. Webber was driving south on State Route 272, at its intersection with U.S. Route 40, near North East, in Cecil County. The main air line on the trailer broke, and the braking system failed. The tractor collided with a passenger automobile in the intersection. The police report recorded no personal injury, no damage to the tractor, and minor damage to the passenger car. The broken air line was soon repaired, and Webber went about his work.

The second accident happened at 3:43 P.M. Webber was driving north on Interstate Route 95 in Harford County. A spring bracket cap on the right rear tandem of the tractor broke in half, causing the rear axle to shift and the tractor to go out of control and overturn. No other vehicle was involved. Webber was seriously injured.

Each of these two accidents involved facts upon which a cause of action might be asserted by one claiming to have been injured or damaged as a proximate result of a breach of duty or breach of warranty by one or more parties named as defendants. How good a cause of action either may be, how sufficiently or deficiently it may be pleaded, how well it can be supported by proof and succeed at trial, are matters of no moment. I think we may properly concern ourselves with only one question, "What was the cause of action upon which the suit was brought?" We may not properly concern ourselves with what cause of action the plaintiff should have brought, or intended to bring.

The declaration timely filed on 22 January 1973 named Webber and the State Accident Fund as plaintiffs. Defendants were Mack Trucks, Inc. and William Ross Shire, Sr. The declaration contained five counts. In the first three counts Webber claimed against Mack Trucks, Inc. The first was based on negligence, the second on breach of warranty,

and the third on strict liability. In the fourth count he claimed against Shire, alleging that Shire was negligent. In the fifth count the State Accident Fund adopted all of the allegations of the first four counts and claimed its subrogated interest under the Workmen's Compensation law. The second, third, and fourth counts adopted, by reference the allegations of the first count. The factual allegations there with which we are concerned were:

"* * * that on or about February 26, 1970, near North East, Cecil County, Maryland, at the intersection of U. S. Route 40 and Maryland State Route 272, the Plaintiff was lawfully, carefully and prudently operating, in a southerly direction on said Maryland State Route 272, a tractor and dump trailer, owned by his employer, Trego Bros., Inc., when suddenly and without warning a mechanical or structural defect or failure on the aforesaid tractor caused the Plaintiff to lose control of the aforesaid tractor and dump trailer; and as a direct result the Plaintiff was involved in an accident with another vehicle operated by William Ross Shire, Sr., in which accident the Plaintiff was injured and damaged."

In the amended declaration the plaintiffs were the same. Mack Trucks, Inc. was the only defendant. There were four counts. In the first three Webber claimed against Mack on negligence, breach of warranty, and strict liability. In the fourth the State Accident Fund asserted its right as subrogee. All subsequent counts adopted by reference the allegations of the first count. The factual allegations there with which we are concerned were:

"that on or about February 26, 1970, on Interstate Highway I 95, in Harford County, Maryland, the Plaintiff was lawfully, carefully and prudently operating, in a northerly direction on said Interstate I 95, a tractor and dump trailer, owned by his employer, Trego Bros., Inc., when suddenly

and without warning a mechanical or structural defect or failure on the aforesaid tractor caused the Plaintiff to lose control of the aforesaid tractor and dump trailer; and as a direct result the Plaintiff was involved in an accident, in which accident the Plaintiff was injured and damaged."

. The parallel allegations in the original declaration and in the amendment do indeed make it appear that they are saying *almost* the same thing — that they are alleging the same cause of action, differing only in describing correctly, rather than erroneously, the geographic location where the cause of action arose, and in abandoning the claim against one of the original codefendants.

That appearance of sameness is, to me, superficial only. It is in reality fallacious, and may well have led the trial judge and my colleagues into error. Two causes of action which one person may have against another do not become the same because they arise from events which happen on the same day, any more than if they happened the next day, the next month, or the next year. Conversely, when there is one and only one cause of action, it does not become different because of a misstatement of the time or place, or even the legal theory upon which liability is based. Corrective amendments of such misstatements relate to the time of the original filing, imperfect as it may be, of the only existing cause of action.

With some fear of oversimplification, I say that when there is but one cause of action, it cannot become two, and when there are two causes of action, they cannot become one.

The cause of action which arose in Webber from the 8:55 A.M. accident in Cecil County, a poor one to be sure, nevertheless became a matured and existing cause of action when that accident happened. The fact upon which Mack's liability necessarily had to be based was the failure of an air line in the brake system, regardless of the vagueness with which the failure was alleged when that cause of action was asserted in the original declaration.

284

The second cause of action, which arose from the 3:43 P.M. accident in Harford County, was totally unrelated to the first. It arose when a defective spring bracket-cap failed, and caused the tractor to go out of control. Regardless of how long the danger from the defective part remained potential, no cause of action arose until the defective part in fact failed, and Webber was injured as a result of that failure.

Regardless of the similarities in the words used, it is clear to me that the cause of action sued upon in the amended declaration was entirely different from and in no way, factually or legally similar to the cause of action alleged in the original declaration. The authorities cited and quoted in support of the conclusion reached in the majority opinion merely confirm me in that view. All that Chief Judge McSherry said in *Zier v. Chesapeake Beach R. Co.*, 98 Md. 35, 56 A. 385 (1903) was premised upon the cause of action being the same, but he pointed out, at 40-41:

> "When, however, by amendment the *cause of action* is changed, a new suit is begun when the amendment is made, and if between the accruing of *that* cause of action and the date of the amendment, which *for the first time* invokes that cause of action, the period of limitations has supervened, then the plea may be interposed to that *new* suit."

That is precisely what I think happened in the case before us.

The substance of *Zier* and the other authorities cited is summed up by the Court of Appeals in *Crowe v. Houseworth*, 272 Md. 481, 325 A. 2d 592 (1974), where it said, at 485-86:

> "The modern view seems to be that so long as the operative factual situation remains essentially the same, no new cause of action is stated by a declaration framed on a new theory or invoking different legal principles."

I see no alternative but to reverse the judgment appealed from.