THE ST. PAUL FIRE AND MARINE INSURANCE COMPANY *v.* XAVIER ARAGONA ET AL.

[No. 51, September Term, 1976.]

*Decided November 4, 1976.*

500

[redacted]

The cause was argued before THOMPSON, MENCHINE and MELVIN, JJ.

*James M. Heffler,* with whom was *R. Harrison Pledger, Jr.,* on the brief, for appellant.

*Naji P. Maloff* for appellees.

MENCHINE, J., delivered the opinion of the Court.

The St. Paul Fire and Marine Insurance Company (St. Paul or appellant) has appealed a judgment for $310,000.00 entered against it in the Circuit Court for St. Mary's County in favor of Xavier Aragona, Marie Aragona, his wife, and Martin Aragona (Aragonas or appellees).

The subject litigation is an offshoot of the case of *Myers v. Aragona,* 21 Md. App. 45, 318 A. 2d 263, *cert. den.* 272 Md. 746 (1974). In *Myers v. Aragona,* the Aragonas had recovered judgment against Mitchell Myers, an attorney at law, under a two count declaration alleging alternatively (a) that Myers was liable for the wrongful acts and breach of fiduciary duty perpetrated by his law partner, one Milton Gordon and (b) that Myers was liable because of his negligence in failing to discover that Gordon had misappropriated and stolen the monies of the Aragonas. We affirmed the judgment upon the ground that Myers was liable to the Aragonas by reason of the Uniform Partnership Act.[1] We found it unnecessary to decide whether Myers would have been liable by reason of negligence.

St. Paul had issued to Mitchell Myers a policy of insurance providing the following coverage:

> "To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages arising out of the performance of

---

[1] Then Article 73A, §§ 13-15, now codified in Corporations and Associations Article, §§ 9-305, 306 and 307.

professional services for others in the Insured's capacity as a lawyer and caused by the Insured or any other person for whose acts the Insured is legally liable. (The performance of professional services shall be deemed to include the Insured's acts as an administrator, conservator, executor, guardian, trustee or in any similar fiduciary capacity, but only to the extent for which in the usual attorney-client relationship the Insured would be legally responsible as attorney for a fiduciary."

The policy of insurance contained, *inter alia*, the following exclusion:

*"This Policy Does Not Apply:*

(a) to any dishonest, fraudulent, criminal or malicious act or omission of the Insured, any partner or employee; . . ."

The Aragonas instituted suit against St. Paul on the policy issued by it,[2] alleging that their final unpaid judgment against Mitchell Myers was within the coverage provided by the policy and that the exclusion did not apply because "The jury [in *Myers v. Aragona, supra*] returned a special verdict of *negligence* against Mitchell Myers."

The cause was submitted in a bench trial. The trial judge

---

2. The policy contained the following provision:

*"Action Against Company.* No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability.

"Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder."

*See also* Maryland Code Article 48A, § 481.

agreed with the Aragonas that the judgment fell within the coverage and without the exclusion of the policy and extended judgment against St. Paul for $310,000.00 with interest from the date of entry of judgment in *Myers v. Aragona, supra.*

In this appeal St. Paul contends, *inter alia,* that coverage for the loss of the Aragonas was barred by the specific exclusion in the policy issued to Myers.

The undisputed facts are these:

The Aragonas entrusted Milton Gordon, law partner of Mitchell Myers, with large sums of money to be deposited in the law firm's bank account for the purpose of the payment of construction loans. The "money was never used the way it was supposed to be used" but was "misappropriated and embezzled by Milton Gordon."

St. Paul contends that the defalcation falls squarely within the policy provision excluding "any dishonest, fraudulent, criminal or malicious act or omission of the Insured, [or] any partner or employee."

The Aragonas, acknowledging that the funds were lost through the embezzlement and defalcation of the partner Milton Gordon, claim that the loss nonetheless came within the coverage of the policy because "This [exclusionary] clause does not affect the liability of the insurer toward plaintiffs who are now seeking payment of their judgment against Mitchell Myers, the insured, because Myers was exonerated of any dishonest acts. The jury returned a special verdict of *negligence* against Mitchell Myers."

The trial judge agreed that the exclusionary clause was not applicable, saying in the course of his written opinion:

> "The basis of recovery in the Jury's verdict which was taken on a special issue and under express instructions of the Court was that the Defendant had failed to take the required action as a practicing lawyer to safeguard his clients interest. This verdict was affirmed on appeal and is no longer subject to further attack. Myers v. Aragona 21 Md. App. 45. That case determined that the

proximate cause of the loss was Myers own act. Myers actions not being 'dishonest, fraudulent, criminal or malicious' and having been found by the Jury to be a proximate cause of the Plaintiff's loss independent of the criminal acts if any of his partner we conclude the exclusion does not apply in this case."

We disagree with the trial judge and shall reverse.

The rule of law governing the interpretation of insurance contracts was succinctly stated by Judge Frederick J. Singley, Jr. in *Govt. Employees Insurer v. DeJames,* 256 Md. 717, 720, 261 A. 2d 747, 749 (1970):

"It is well settled that in interpreting insurance contracts, words are to be given their customary and normal meaning. *State Farm Mut. Auto Ins. Co. v. Treas,* 254 Md. 615, 255 A. 2d 296 (1969); *American Home Assurance Co. v. Erie Ins. Exchange,* 252 Md. 116, 248 A. 2d 887 (1969); *Offutt v. Liberty Mut. Ins. Co.,* 251 Md. 262, 247 A. 2d 272 (1968); *Harleysville Mut. Cas. Co. v. Harris & Brooks, Inc.,* 248 Md. 148, 151, 235 A. 2d 556 (1967), and cases there cited. Absent ambiguity the construction of the contract remains within the province of the court and Maryland has not adopted the rule, followed in many jurisdictions, that an insurance policy is to be most strongly construed against the insurer, *American Cas. Co. v. Aetna Cas. & Surety Co.,* 251 Md. 677, 248 A. 2d 487 (1968); *Mateer v. Reliance Ins. Co.,* 247 Md. 643, 233 A. 2d 797 (1967); *Ebert v. Millers Mut. Fire Ins. Co.,* 220 Md. 602, 155 A. 2d 484 (1959). If the language of an insurance contract is ambiguous, however, construction is for the jury, *Ebert v. Millers Mut. Fire Ins. Co., supra,* 220 Md. at 610; *Eagle Star & British Dominions Ins. Co. v. Fleischman,* 175 Md. 433, 2 A. 2d 424 (1938); 22 Appleman, *Insurance Law and Practice* § 12853 (1947) at 7, and the ambiguity is to be resolved against the company

which prepared the policy and in favor of the insured, *American Cas. Co. v. Aetna Cas. & Surety Co., supra,* 251 Md. at 684; *Allstate Ins. Co. v. Humphrey,* 246 Md. 492, 496, 229 A. 2d 70 (1967)."

Reaffirming Judge Singley's summary of that rule of law, the Court of Appeals in *C & H Plumbing v. Employers Mut. Cas. Co.,* 264 Md. 510, 512, 287 A. 2d 238, 239 (1972), made this further observation:

> "Moreover, we have no right to relieve one of the parties from disadvantageous terms by process of interpretation nor may we make a new contract under guise of construction."

*C & H Plumbings, supra,* involved the interpretation of the following exclusionary clause:

> "3. THIS POLICY DOES NOT INSURE AGAINST:
>
>   (a) Loss caused by infidelity of an officer or employee of the insured whether such person is acting alone or in collusion with others or by infidelity of persons to whom the insured property is entrusted." 264 Md. at 513, 287 A. 2d at 239.

The Court then cited and commented upon a text relating to exclusionary clauses concerning dishonesty:

> "*Richards on the Law of Insurance* § 298 (5th ed. Freedman 1952) states:
>
>   'Courts in construing and applying provisions of policies excepting from coverage loss or damage caused by the dishonesty of employees have respected the express language and denied liability on the part of the insurer.' *Id.* at 987.

> "In support of that proposition the author cites *Hunter v. Pearl Assur. Company,* 292 Mich. 543, 291 N. W. 58 (1940), and *Hoffman Bros. v. Commercial*

*Union Assur. Co.,* 221 App. Div. 167, 222 N.Y.S. 641 (1927), aff'd 248 N. Y. 578, 162 N. E. 531. In *Hunter* the court held that 'theft' as used in a clause excluding theft by employees included larceny by conversion. In *Hoffman* a public porter was engaged to carry sample cases for the insured officer who was traveling seeking orders. It was held that the porter came 'within the class comprised by the words "employee, servant, or messenger." ' " 264 Md. at 514-15, 287 A. 2d at 240.

The Court then announced its holding:

"In the view we take of this case the word 'employee' in the context in which it is used would be understood by the average, ordinary individual as including the persons responsible for the thievery here. He would regard them as employees after quitting time as well as during their working day.

"C & H dwells on the meaning of the word 'infidelity' and attempts to compare that term to the meaning of the term in certain other insurance contexts, pointing to Code (1968 Repl. Vol.) Art. 48A, § 69 (1) in which fidelity insurance is defined as 'insurance guaranteeing the fidelity of persons holding positions of public or private trusts.' It then goes on to examine fidelity losses. We do not regard the point as well taken.

"*Webster, op. cit.,* says of 'infidelity':

'1. * * *

'2. Breach of trust; unfaithfulness to a charge or to moral obligation; treachery; deceit; also an unfaithful act.
* * *

'Syn. * * * perfidy.'

*Random House, op. cit.,* defines the term as 'unfaithfulness; disloyalty.'

"Using the common, every day understanding of the terms we are of the opinion that when persons who regularly worked for C & H stole $10,000 worth of supplies this was a 'loss caused by infidelity of an employee of the insured.' " 264 Md. at 517, 287 A. 2d at 241.

Appellees thus state their position on this issue:

"Mitchell Myers clearly neglected his duties to his clients and in so doing, his negligence allowed substantial resulting injury to appellees. In the plain meaning of the contract of insurance, if Myers had been dishonest himself or if his partner through dishonesty had caused the injury and Myers had *not* been found *negligent* in performing his normal duties as an attorney, then and only then would the company's exclusionary clause have been applicable, either to him directly or through his partnership relation. Defendant's argument that

'. . . there can be no instance where a loss is occasioned by a partner's dishonesty if the insured does discover the dishonesty and prevent the loss.'

is circuitous. Considering the conclusion that through diligence a loss can be *prevented;* appellees' claim is substantiated even though a dishonest deed had been executed, the non-negligent conduct on the part of the attorney, Myers, could have prevented the resulting injury. Therefore, *negligence* on the part of the insured was in fact the causal link to the *loss* of appellees. It is indemnification against such negligence for which malpractice insurance is purchased."

The appellees cite only *Parker v. State Farm Mut. Auto Ins. Co.*, 263 Md. 206, 282 A. 2d 503 (1971), to support their stated position that the exclusionary clause does not apply. *Parker* does not support that position. On the contrary, *Parker*

clearly recognized that when "no ambiguity [appears] in the coverage, exclusionary, or definition clauses of the policy, . . . the insurance carrier contracted to underwrite a specific coverage and should not subsequently be expected to assume liability for a risk which it expressly excluded." 263 Md. at 215-16, 282 A. 2d at 508.

We see no ambiguity in the subject insurance contract. Using the common, every day understandings of the terms used in the exclusionary clause we are of the opinion that the subject loss was a result of "dishonest . . . act . . . of the partner [of the Insured]." *C & H Plumbing, supra,* 264 Md. at 517, 287 A. 2d at 241-42.

We are persuaded that the subject loss clearly falls within the exclusionary clause and was not within the protection afforded by the policy of insurance. The fact that the insured may have been negligent in failing to discover the perfidy of his partner may indeed have been an alternate ground for his liability to the Aragonas. It did not, however, extend the insured's coverage as to St. Paul or alter the plain and unambiguous language of the exclusionary clause.

Our ruling upon the discussed issue being dispositive of the case on appeal, we find it unnecessary to address the other contentions of the appellant.

*Judgment reversed.*
*Costs to be paid by the appellees.*