## XAVIER ARAGONA ET AL. v. ST. PAUL FIRE AND MARINE INSURANCE COMPANY

[No. 4, September Term, 1977.]

*Decided November 3, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Ronald S. Schimel* and *Karl G. Feissner,* with whom were *Feissner, Garrity, Levan & Schimel* on the brief, for appellants.

*James M. Heffler* for appellee.

MURPHY, C. J., delivered the opinion of the Court.

We granted certiorari in this case to consider the proper interpretation of an exclusionary provision in a policy of lawyer's malpractice insurance issued to attorney Mitchell Myers by the appellee, St. Paul Fire and Marine Insurance Co. (St. Paul). Under the policy, St. Paul agreed to pay on behalf of Myers:

> "all sums which the Insured shall become legally obligated to pay as damages arising out of the performance of professional services for others in the Insured's capacity as a lawyer and caused by the Insured or any other person for whose acts the Insured is legally liable. . . ."

Expressly excluded from coverage under the policy was "any dishonest, fraudulent, criminal or malicious act or omission of the Insured, any partner or employee; . . . ."

The relevant facts are as follows: Myers and Milton Gordon practiced law as a partnership. Between 1963 and 1966, Gordon misappropriated funds, without Myers' knowledge, from a partnership escrow account held for the use and benefit of the appellants, Xavier Aragona, his wife, and Martin Aragona (the Aragonas).[1] The Aragonas sued Myers to recover their loss, alleging in Count I of the

---

1. Gordon was later indicted and convicted for the offense.

declaration that Myers was vicariously liable for Gordon's dishonesty under the Uniform Partnership Act,[2] and in Count II that he was liable because of his negligent failure to inspect the financial records of the partnership and in failing to discover Gordon's misappropriations. The court directed a verdict for $310,000 in favor of the Aragonas under Count I of the declaration and submitted the case to the jury to determine Myers' liability for the loss under Count II. The jury found that Myers was negligent, and returned a verdict against him for $310,000.

The Court of Special Appeals affirmed the judgment as to Count I; it, therefore, found it unnecessary to consider whether the case was properly submitted to the jury on the negligence count. See Myers v. Aragona, 21 Md. App. 45, 318 A. 2d 263 (1974).

The Aragonas thereafter sought to recover the amount of their judgment from St. Paul. The insurer claimed that the loss was caused by Gordon's dishonesty and was therefore excluded from coverage. The Aragonas filed a declaratory judgment action against St. Paul, asking that the question of policy coverage be determined by the court. They contended that because the jury found that the loss was caused by Myers' negligence, it was within the coverage of the policy. The court found that "the proximate cause of the loss in this case was the negligence of [Myers] . . . in the way the funds were handled and the law business was operated." It stated that implicit in the jury's verdict that Myers was negligent was a factual finding that "the proximate cause of the loss so far as this defendant was concerned was not the dishonesty or negligence . . . of the partner but the failure of this partner [Myers] to live up to his obligation as a practicing member of the Bar, and for that reason . . . his action brings this case squarely within the insuring provision of the policy." In a supplemental opinion and order, the court said that "Myers actions not being 'dishonest, fraudulent, criminal or malicious' and having been found by the Jury to be a proximate cause of the Plaintiff's loss independent of

---

2. Maryland Code, Corporations and Associations Article, § 9-305 et seq.

the criminal acts if any of his partner . . . the exclusion does not apply in this case."

On appeal, the Court of Special Appeals reversed. *St. Paul Fire & Mar. Ins. v. Aragona,* 33 Md. App. 499, 365 A. 2d 309 (1976). Finding no ambiguity in the provisions of the policy, and "[u]sing the common, every day understandings of the terms used in the exclusionary clause," the court concluded that the loss was the result of Gordon's dishonest act and was therefore excluded from coverage. It said, Judge W. Albert Menchine speaking for the court:

> "We are persuaded that the subject loss clearly falls within the exclusionary clause and was not within the protection afforded by the policy of insurance. The fact that the insured may have been negligent in failing to discover the perfidy of his partner may indeed have been an alternate ground for his liability to the Aragonas. It did not, however, extend the insured's coverage as to St. Paul or alter the plain and unambiguous language of the exclusionary clause." 33 Md. App. at 507, 365 A. 2d at 313.

The Aragonas contend before us that the policy provisions in question are ambiguous; that since they are of uncertain import and reasonably susceptible of a double construction, they must be strictly construed against the insurer, and the ambiguity resolved in favor of the policyholder. They argue that because they proved a cause of action based on Myers' negligence which was separate and independent from the partnership liability, the loss is covered by the insuring provisions of the policy. They contend that where there is more than one ground of liability, one being covered by the policy while the other is not, the insurer is obligated to pay the loss even though the alternate ground of liability may be excluded from coverage under the policy. The Aragonas also maintain that even if the pertinent policy provisions are not ambiguous, the cases support the trial court's conclusion that the loss was covered by the insurance contract, notwithstanding the policy exclusion.

Insurance contracts, like other contracts, must be read as a single document and construed as a whole to ascertain what the parties really meant. *Federal Ins. Co. v. Allstate Ins. Co.*, 275 Md. 460, 341 A. 2d 399 (1975); *Automobile Ins. Co. v. Thomas*, 153 Md. 253, 138 A. 33 (1927). In other words, the primary purpose in construing insurance contracts is to ascertain and effectuate the intention of the parties, *U. S. F. & G. v. Nat. Pav. Co.*, 228 Md. 40, 178 A. 2d 872 (1962); *Life Insurance Co. v. Plummer*, 181 Md. 140, 28 A. 2d 856 (1942), and the language employed in the policy is to be afforded its ordinary and usually accepted meaning. *C & H Plumbing v. Employers Mut.*, 264 Md. 510, 287 A. 2d 238 (1972); *State Farm Mutual v. Treas*, 254 Md. 615, 255 A. 2d 296 (1969). When the language is unambiguous and plain as to its meaning, construction of the insurance contract is within the province of the courts, and Maryland has not adopted the rule, followed in many jurisdictions, that an insurance policy is to be most strongly construed against the insurer. *Travelers Ins. Co. v. Benton*, 278 Md. 542, 365 A. 2d 1000 (1976); *Gov't Employees Insur. v. DeJames*, 256 Md. 717, 261 A. 2d 747 (1970). Where, however, the language of an insurance contract is ambiguous, construction is for the jury and the ambiguity is to be resolved against the company which prepared the policy and in favor of the insured. *American Cas. Co. v. Aetna Cas.*, 251 Md. 677, 248 A. 2d 487 (1968); *Gov't Employees Insur. v. DeJames, supra.*

Under its policy, St. Paul agreed to pay on behalf of Myers all sums which he was legally obligated to pay as damages arising out of the performance of legal services for others or for those of any other person for whom he was legally liable; but expressly excluded from this coverage was a loss resulting from "any dishonest, fraudulent, criminal . . . act . . . of the Insured, any partner or employee." We see no ambiguity in this language. The question before us is whether, in view of the plain language of the policy, the exclusionary clause applies where, as here, one of several causes contributing to the loss was not within the exclusion. In considering this issue, we bear in mind the distinction between causes of loss from which liability may

be imposed upon an insured by law, and causes of loss for which the insurer may have contracted to be liable. *See Automobile Ins. Co. v. Thomas, supra,* at 257.

Cases in other jurisdictions which have considered the applicability of exclusionary clauses in similar circumstances are helpful. In *Lee v. Aetna Casualty & Surety Co.,* 178 F. 2d 750 (2nd Cir. 1949), Lee was injured while shopping at the insured's store. Invited by the insured to enter an elevator on the store's premises, Lee did so and fell down an elevator shaft. The policy provided coverage for bodily injury arising out of (a) the ownership or use of the premises or conduct of the business and (b) the ownership or use of elevators described in the declaration. An exclusion provided that the policy did not apply to the ownership, maintenance or use of any elevator unless listed in the policy. None was listed.

Lee recovered a judgment against the insured and subsequently sued the insurer. The trial court determined that the liability of the insured did not come within the coverage of the policy because the accident arose out of the use of the elevator — a use expressly excluded under the policy. It said, 81 F. Supp. 1008 at 1011:

> "We do not agree with plaintiff's contention that the proximate cause of the accident was the wrongful and negligent invitation to enter the elevator. . . . The proximate cause of the accident, judged by the applicable law to determine liability under an insurance policy is the cause nearest the occurrence. Bird v. St. Paul Fire & Marine Ins. Co., 224 N.Y. 47, 53, 120 N.E. 86, 13 A.L.R. 875. The proximate cause of the accident was the insured's use of the elevator and the attempted use of it by plaintiff."

In affirming the judgment of the lower court, the Court of Appeals found that Lee's injury was the result of his use of the elevator and that this use was excluded from coverage. Judge Learned Hand, speaking for the court, observed:

> "As always, the language [of the policy] is to be

interpreted by its purpose, and the purpose was to exclude liabilities occasioned by the insured's availing itself of an elevator for the purpose of its business. . . ." 178 F. 2d at 751.

It would thus appear that the court in *Lee*, faced with a loss caused by the use of an elevator (excluded from coverage) and by the negligence of the insured (not excluded), held that the exclusion applied since the proximate cause of the loss was an act within the terms of the exclusionary provision.

In *International D. Eng. Co. of Asia, Inc. v. American H. A. Co.*, 474 F. 2d 1242 (9th Cir. 1973), the policy covered loss by fire of the insured's property in South Vietnam, but not if "caused directly . . . by a hostile act by or against a belligerent power." The insured's property was destroyed by fire caused by an aerial parachute flare dropped from an unidentified military aircraft in the course of military operations. While conceding that the dropping of the flare was a "hostile act," the insured contended that the fire loss should not be subject to the war risk exclusion clause because it was the negligent dropping of the flare, rather than the hostile character of its use, which resulted in the fire. The court, affirming the judgment of the trial court (352 F. Supp. 827), held that the exclusionary clause applied and there could be no recovery under the policy since the dropping of the flare was the dominant, effective, proximate, and direct cause of the loss regardless of whether the hostile act was negligently performed.

In *Westby v. Certain Underwriters at Lloyd's, London*, 24 Ill. App. 2d 20, 163 N.E.2d 849 (1959), the plaintiff was burned as a result of having her eyebrows dyed. The process consisted of applying a hot wax to the lashes and eyebrows, followed by the application of a dye. A judgment was recovered against the operator of the beauty parlor for negligence in failing to pretest the dyes. Suit was then brought against the beauty operator's insurer on a policy which protected her from all claims for bodily injury resulting from any treatment or the use of any preparation in the operation of her beauty parlor. Excluded from coverage under the policy was loss on account of injuries

suffered by reason of or caused by the application or use of any eyebrow dyes.

The plaintiff argued that the exception did not apply because the insured was charged with negligence by failing to pretest the dyes, rather than negligent application. She also contended that her injuries may have been caused by the use of the dye, by the failure to pretest, or by the application of the hot wax; that only the application of the dye came within the exclusion, and if either of the other causes was the proximate cause of the injury, she could recover under the policy.

In holding that the exception applied, the court did not consider what was the proximate cause; a causal connection between the injury and the excluded act was found sufficient. The court said:

> "The defendant, in clear language, stated that it did not wish to assume the risks accompanying the application and use of eyebrow dyes; it stated that any injuries caused thereby were not covered by the contract.
>
> "Although the negligence charged . . . was the failure to pretest the dyes, the statement of claim made it abundantly clear that the use of the dyes brought about her burns and rashes. If the dyes were not applied she would not have been injured. . . ." 163 N.E.2d at 850.

Whether a policy covers a loss caused by excluded as well as covered acts has been found by other courts to turn on the proximate, efficient, dominant or direct cause of the loss; if that cause is within the exclusion, the policy does not cover the loss. See Sabella v. Wisler, 59 Cal. 2d 21, 377 P. 2d 889, 27 Cal. Rptr. 689 (1963) (case remanded to determine whether settling of house, an excluded cause, or rupture of sewer line, a covered risk, was the proximate cause of the loss); Frontis v. Milwaukee Ins. Co., 156 Conn. 492, 242 A. 2d 749 (1968) (the efficient cause, the one that sets the others in

motion, is the cause to which the loss is to be attributed); *Fogarty v. Fidelity & Casualty Co.*, 122 Conn. 245, 188 A. 481 (1936) (exclusion applied since fire, rather than collision, was proximate cause of loss); *Fawcett House, Inc. v. Great Central Insurance Co.*, 280 Minn. 325, 159 N.W.2d 268 (1968) (direct cause of loss was vandalism, a covered risk, while the excluded cause acted only indirectly and incidentally); *Marks v. Lumbermen's Ins. Co.*, 160 Pa. Super. Ct. 66, 49 A. 2d 855 (1946) (direct and proximate cause of loss was a covered risk, although an excluded peril may have remotely or incidentally contributed to the loss).

In terms of proximate causation, the dishonest and criminal act of Myers' partner in misappropriating the escrowed funds was, of course, the direct and precipitating cause of the loss; no loss would have occurred had Gordon not stolen the money. Although the negligence of Myers may have facilitated Gordon's theft of the funds and been a contributing cause of the loss in that sense, it was indirect and remote at best. That Myers may have been liable for his negligence to the Aragonas does not determine whether his liability is within the coverage of the policy; the terms of the policy determine the reach and extent of its coverage. In this connection, principles of causation will not be applied to defeat the intent of the parties, as manifested in the insurance contract; indeed, as our predecessors noted in *Automobile Ins. Co. v. Thomas, supra* (153 Md. at 257), general definitions of proximate causation afford little aid in determining whether a particular loss was intended to be covered under the insurance policy. We think the parties intended, from the language used in the insurance contract construed as a whole, that any loss which resulted from any dishonest or criminal act of the insured's partner was excluded from coverage, and that the exclusionary clause of the policy was all-encompassing in this respect. Apropos of the instant case is the Court's statement in *Parker v. St. Farm Mut. Auto. Ins.*, 263 Md. 206, 216, 282 A.2d 503 (1971), in commenting on exclusionary clauses in insurance contracts, that "the insurance carrier contracted to underwrite a specific coverage and should not subsequently

be expected to assume liability for a risk which it expressly excluded," it being clear that "[t]he law generally will not permit by indirection or circuity what it will not allow directly." [3]

*Judgment affirmed; costs to be paid by appellants.*

---

3. The cases relied on by the Aragonas, for the most part, involve the broad obligation of an insurer to provide a defense to the insured, rather than the insurer's obligation to pay under the policy. Since the obligation of an insurer to defend its insured is usually determined by the allegations of the suit, these cases are largely inapposite in determining the extent of the insurer's contractual obligation to indemnify its insured. Indeed, we have said that even if the plaintiff fails to allege facts clearly bringing the claim within the policy coverage, the insurer still must defend if there is even a potentiality that the claim could be covered by the policy. *See* Brohawn v. Transamerica Ins. Co., 276 Md. 396, 347 A. 2d 842 (1975).