897 A.2d 854

**Chik S. CHANG et al.**

v.

**BRETHREN MUTUAL INSURANCE COMPANY.**

**No. 657, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

May 1, 2006.

**536**

Tonja E. Kelley (Thomas M. Wilson, III, Tydings & Rosenberg, LLP, on brief), Baltimore, for appellant.

Lucinda E. Davis (George E. Reede, Jr., Niles, Barton & Wilmer, LLP, on brief), Baltimore, for appellee.

Panel JAMES R. EYLER, KENNEY and PAUL E. ALPERT (Ret., specially assigned), JJ.

EYLER, JAMES R., J.

This case presents insurance coverage and related issues arising from a policy issued to Chik S. Chang and Hye Ja Chang, appellants, by Brethren Mutual Insurance Company, appellee. The Circuit Court for Anne Arundel County entered summary judgment in favor of appellee. We shall vacate the summary judgment and remand for further proceedings not inconsistent with this opinion.

## Factual background

Appellants owned property located at 7339 E. Furnace Branch Road, Glen Burnie, improved by a building leased to commercial tenants (the building). Appellee issued a "businessowners policy" (the Policy) to appellants, effective September 29, 2002 to September 29, 2003. The Policy expressly covered the premises located at 7339 E. Furnace Branch Road.

In February 2003, a heavy snowfall caused snow to accumulate on the roof of the building. This caused water to leak into the demised premises and caused concern as to whether the roof would collapse. On February 22, the Anne Arundel County Fire Department issued a notice stating that the building could not be occupied until the snow was removed and the roof inspected by an engineer.

On February 22, 2003, Ms. Chang, one of the appellants, met with Lloyd K. Butts, a representative of Security Remodeling, Inc. (Security). Ms. Chang and Security entered into an agreement whereby Security agreed "to perform all restorations which are approved by your insurance company, with the funds that are provided by your insurance company." The contract provided that appellants would incur no "out of pocket expense," except for "the homeowners' deductible as described in your homeowners insurance policy."

In his deposition, Mr. Butts testified to the following. On February 22, he contacted appellants' insurer, using information provided by appellants. Later the same day, he received a call from Kirsten W. Barefield, an adjuster employed by Crawford Claims Management Services, an outside adjusting agency retained by appellee. Mr. Butts explained to Ms. Barefield that the snow had to be removed to prevent further water damage, and she agreed.[1] Security removed the snow

---

1. On February 24, 2003, Mr. Butts sent a handwritten note to Ms. Barefield enclosing the agreement between Ms. Chang and Security and confirming Ms. Barefield's oral authorization to remove all snow.

by the morning of the 23rd and then inspected the interior of the building to assess the damage caused by leaking water.

A few days later, there was another significant snowfall, and Security removed that snow from the roof. Security repaired the damage caused by leaking water, and on April 11, 2003, submitted an invoice to Ms. Chang for the total amount of $30,105.50. The invoice included a charge for the first snow removal in the amount of $11,250.00 and a charge for the second snow removal in the amount of $3750.00. It included an "overhead" item in the amount of $3612.66 and a "profit" item in the amount of $2408.44. The remaining charges were for labor and materials to repair the damage.

Security's invoice obviously was sent to Ms. Barefield because, under cover letter dated April 15, 2003, Ms. Barefield sent to Mr. Butts "a revised estimate of repair," referring to Security's invoice. Ms. Barefield stated that the charges for snow removal, overhead, and profit had been removed and that a check in the amount of $6834.40 would be forwarded. A copy of the Security invoice was enclosed with the April 15 letter, which contained a handwritten notation, "no coverage," next to the snow removal items, and a handwritten notation, "O & P not applicable," next to the overhead and profit items.

Appellee forwarded a check to appellants, payable to appellants and Security,[2] dated April 28, 2003, in the amount of $18,337.03. The check purported to be full payment for all loss caused by the accumulation of snow on the roof. The total amount paid included the $6834.40 that was intended for Security. The balance was for loss sustained unrelated to Security's work.

On September 12, 2003, Security filed a complaint in circuit court against appellants. Security recited that appellants had contracted with Security to remove snow and perform repairs but appellants had refused to pay. Security alleged breach of contract in count I, and unjust enrichment in count II, and claimed $30,105.50, attorney's fees, and costs.

2. The check also included a bank as payee, presumably a mortgagee.

On February 10, 2004, appellants filed a third party complaint against appellee. Appellants alleged that they entered into a contract with Security to remove snow and make emergency repairs to prevent further damage to the property, to be paid out of insurance proceeds, except for the deductible amount. In count I, appellants asserted breach of contract, alleging that the claim for Security's work was property loss and covered under the Policy. In count II, appellants requested that appellee be substituted for them as the real party in interest in the dispute with Security.

By letter dated May 3, 2004, appellants requested appellee to assume their defense in the suit by Security against appellants. By letter dated May 21, 2004, appellee refused, explaining that Security's claims were not covered, or potentially covered, under the Policy.

On June 3, 2004, appellants filed an amended third party complaint, adding a second count for breach of contract, designated as count II, in which they alleged that appellee had a duty to defend appellants in the suit by Security. In count I, appellants sought $15,000.00, attorney's fees, and costs. In count II, appellants sought attorney's fees incurred in defending the suit by Security and in pursuing the third party complaint. The real party in interest claim did not change, except that it was renamed as count III.

In the summer of 2004, following discovery, appellants filed a motion for summary judgment with respect to Security's claims against them, requesting that judgment be entered in Security's favor in the amount of $6834.40. Appellants also filed a motion for partial summary judgment against appellee, requesting that judgment be entered on count II, with respect to appellee's duty to defend appellants. Appellee filed a motion for summary judgment with respect to appellants' claims against it. By memorandum opinion and order dated January 3, 2005, the court denied appellants' motions and granted appellee's motion. The latter ruling is the subject of this appeal.

On March 16, 2005, Security's claims against appellants were tried non-jury. At the close of Security's evidence, the court granted appellants' motion for judgment. Subsequently, on April 13, the court amended its judgment to require appellants to pay $6834.40 to Security. That judgment has been satisfied.

Following the entry of a final judgment, appellants noted an appeal to this Court, in which they challenge the entry of summary judgment in favor of appellee with respect to their breach of contract claims.[3] Appellants acknowledge that their claim for indemnification is moot because a judgment was entered in their favor with respect to the claim for snow removal costs. Appellants assert that their claims for attorney's fees and costs incurred in the defense of Security's claims and in prosecuting their third party claims are not moot.

## The Policy

According to the declarations page, the Policy was a "businessowners policy," issued to appellants as named insureds. The declarations page described the covered premises as 7339 E. Furnace Branch Road. Under property coverage, it provided insurance limits in the amount of $434,800 for buildings and $10,000 for business personal property, subject to a $1,000 deductible. Under liability coverage, it provided insurance limits in the amount of $1,000,000 for liability and medical expenses, $5,000 per person for medical expenses, and $100,000 for legal liability from fire. The declarations page also reflected other coverages in effect, which were optional, and not directly relevant to the issues before us.

In pertinent part, the Policy included a "special property coverage form," modified by a "Vantage endorsement"[4] (the

---

3. Appellants have abandoned their real party in interest claim.

4. The modifications made by the endorsement are not relevant to the issues before us.

property coverage form); a liability coverage form; and common policy conditions.

In the "coverage" part of the property coverage form, appellee agreed to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Section A.

In the "coverages" part of the liability coverage form, appellee agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' . . . caused by an 'occurrence[.]' . . ." Section A.1.a. and b. Appellee also agreed to defend any suit seeking such "property damage." Section A.1.a.

In the definitions subpart, "occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Section F.12. "Property damage" was defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." Section F.15.

In the "exclusions" subpart, one of the exclusions was " 'property damage' for which the insured was obligated to pay damages by reason of the assumption of liability in a contract or agreement." Section B.1.b.

### Contentions of the Parties

As explained above, appellants' claims against appellee originally included the cost of snow removal, performed by Security. That claim for indemnity under the Policy is now moot because Security lost its claim against appellants for the cost of snow removal, and thus, appellants have not incurred any expense for snow removal.

Appellants' claims for fees and costs are premised on two different parts of the Policy: the property coverage form (first party coverage) and the liability form (third party coverage). Appellants' claims are for fees and costs incurred (1) in defending the claims by Security against them and (2) in

pursuing the third party claim against appellee, in which appellants asserted first party coverage and at least the potentiality of third party coverage, carrying with it a duty to defend appellants in the suit by Security.

*Property coverage—first party coverage*

The parties agree that the building in question was "covered property" and that the cause of damage to the building and contents, *i.e.*, water leakage, was a "covered cause."

Appellants' first contention is: the snow removal costs were covered as a mitigation expense under section E.3.a.(4). Section E. is entitled "property loss conditions," and subsection 3.a. is entitled "duties in the event of loss or damage." Subsection 3.a.(4) provides that

a. You must see that the following are done in the event of loss or damage to Covered Property:

. . . .

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. . . .

Appellants' second contention, with respect to the property coverage form, is that snow removal costs were covered as an "extra expense" under section A.5.g. Section A. is entitled "coverage," subsection A.5. is entitled "additional coverages," and A.5.g. is entitled "extra expense." Subsection A.5.g. provides in part:

(1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises[.] . . .

(2) Extra Expense means expense incurred (a) To avoid or minimize the suspension of business and to continue "operations": (i) At the described premises[.] . . .

Appellants contend snow removal costs were unambiguously covered under both of the above Policy provisions. In the

alternative, according to appellants, the provisions were ambiguous, and in the absence of extrinsic evidence, the ambiguity had to be resolved against appellee.

Assuming snow removal costs were covered, appellants' theory, apparently, is that appellee's failure to pay the costs of snow removal constituted a breach of contract (the Policy), causing Security to sue appellants and appellants to sue appellee. According to appellants, the fees and expenses incurred in defending and pursuing the claims were recoverable as damages resulting from the breach.

Appellants suggest that appellee's conduct constituted a breach of a "common law" duty. We shall consider appellee's conduct only with respect to a breach of contract action. In circuit court, appellants pled and argued breach of contract only, as the basis of liability of appellee. There was no tort claim.

Appellee contends that snow removal costs were not covered. Appellee argues that (1) snow removal costs did not constitute "direct physical loss of or damage to covered property" as required in the general insuring language in section A.; (2) section E., "property loss conditions," did not provide a separate grant of coverage under the property coverage form and, in any event, by clear language, required only "consideration" of, not payment of, mitigation expenses; and (3) the cost of snow removal was not covered under "additional coverages."

Appellee also contends that appellants could not recover under the property coverage form, even if the costs were covered, because attorney's fees were not recoverable on a first party coverage claim.

*Liability coverage—third party coverage*

Appellants contend that, because the Policy provided both first and third party coverage, it was an all risks policy. Appellants observe that, like all policies, it must be read as a whole. Appellants argue that the language in section A. of the liability coverage form, specifically the phrase "this insur-

ance," means all insurance provided by the Policy, not just liability insurance, and snow removal costs were covered under a portion of the Policy. Thus, according to appellants, Security's suit sought damages "because of . . . property damage . . . to which this insurance applies." Thus, the duty to defend provision was satisfied.

Appellee contends there was no potentiality of coverage because (1) appellants did not sustain damages as a result of "property damage" within the meaning of coverage section A.1. and (2) the claims against appellants were contract claims, expressly excluded under the liability coverage form.[5]

## Standard of Review

Under Maryland Rule 2–501(e), the circuit court may enter summary judgment for the moving party if it determines there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Md. Rule 2–501(e); *Rite Aid Corp. v. Hagley*, 374 Md. 665, 683, 824 A.2d 107 (2003). A party opposing a motion for summary judgment that meets threshold requirements must produce admissible evidence to show that a genuine dispute of material fact exists. *Id.* at 684, 824 A.2d 107. This requires more than "general allegations which do not show facts in detail and with precision." *Id.* (quoting *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 738, 625 A.2d 1005 (1993)). The facts and inferences that can reasonably be drawn from those facts must be viewed

---

5. As previously mentioned, the court entered summary judgment in favor of appellee prior to the trial of Security's claims against appellants. Appellants contend that we properly may consider the trial testimony in deciding the issue before us, even though the testimony was not before the motions judge. Appellee contends that we may not consider the testimony.

Appellants argue that the trial testimony established three points: (1) appellee authorized Security to remove the snow; (2) Security sued appellants because appellee did not pay for the snow removal; and (3) appellants assumed no personal liability under their contract with Security.

We need not decide this issue because there is nothing in the trial testimony that is material to our conclusion that was not, in substance, before the motions judge. Appellee was not a participant at trial.

in the light most favorable to the non-moving party. *Rems-burg v. Montgomery*, 376 Md. 568, 579–80, 831 A.2d 18 (2003). In reviewing a grant of summary judgment, we must determine whether there is a genuine dispute of material fact and whether the court was legally correct. *Hagley*, 374 Md. at 683, 824 A.2d 107; *Carter v. Aramark Sports & Entm't Servs., Inc.*, 153 Md.App. 210, 224, 835 A.2d 262 (2003).

In analyzing a circuit court's decision, we are generally confined to the bases relied on by the court, and will not affirm the grant of summary judgment for a reason not relied on by the court. *Warner v. German*, 100 Md.App. 512, 517, 642 A.2d 239 (1994) (citing *Cheney v. Bell Nat'l Life Ins. Co.*, 315 Md. 761, 764, 556 A.2d 1135 (1989), and *Geisz v. Greater Baltimore Med. Ctr.*, 313 Md. 301, 314 n. 5, 545 A.2d 658 (1988)).

### Discussion

*Property coverage—first party coverage*

As previously noted, the parties differ as to whether snow removal costs, on the facts before us, come within the definition of a mitigation expense, under section E.3.a.(4), or an "extra expense," under section A.5.g. We shall address this issue, even though there is no longer an indemnity claim because, as discussed below, it is necessary to do so in order to address the question of liability for attorney's fees and expenses.

Preliminarily, we note that this issue does not turn on whether the snow removal costs were within "covered property." The definitions of "covered property" and "cause of loss," and thus the scope of coverage under the general insuring agreement, do not change even if the costs were a mitigation expense. Appellants' claim is based on a contractual imposition of duty on the insured, once "covered property" has been damaged, to take reasonable action to protect the "covered property" from further damage. The question is whether appellee agreed to pay for that action and, if so, under what

circumstances. Any damages, based on a breach of a duty to pay, would be consequential damages.

In order for section E.3.a.(4) to apply, (1) a covered loss must have occurred, (2) followed by the performance of work necessary to prevent further loss, and (3) the costs incurred for the work must be reasonable. Appellants contend that this section required appellee to pay appellants for costs incurred in preventing further damage to the property. Appellee asserts that there is no language in the provision indicating that appellee would pay any or all expenses incurred by appellants in protecting the property from further damage, but rather, "consideration" would be given to any documented expenses in settlement of the claim.

In Maryland, insurance policies are generally construed in the same manner as contracts. *Collier v. MD–Individual Practice Ass'n, Inc.*, 327 Md. 1, 5, 607 A.2d 537 (1992). An insurance contract, like any other contract, is measured by its terms unless a statute, a regulation, or public policy is violated thereby. *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486 (1985). We do not follow the rule, adopted in other jurisdictions, that an insurance policy is to be construed most strongly against the insurer. *Collier*, 327 Md. at 5, 607 A.2d 537; *Cheney*, 315 Md. at 766, 556 A.2d 1135. We construe the instrument as a whole in order to determine the parties' intent. *Pac. Indem.*, 302 Md. at 388, 488 A.2d 486; *Collier*, 327 Md. at 5, 607 A.2d 537; *Aragona v. St. Paul Fire & Marine Ins. Co.*, 281 Md. 371, 375, 378 A.2d 1346 (1977). In order to determine the intention of the parties, "Maryland courts should examine the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Pac. Indem.*, 302 Md. at 388, 488 A.2d 486 (citations omitted). In doing so, we give the words their usual, ordinary, and accepted meanings. *Id.*; *Mut. Fire Ins. Co. v. Ackerman*, 162 Md.App. 1, 5, 872 A.2d 110 (2005) (citing *Nationwide Mut. Ins. Co. v. Scherr*, 101 Md.App. 690, 695, 647 A.2d 1297 (1994)). The test is what

meaning a reasonably prudent layperson would attach to the term. *Pac. Indem.*, 302 Md. at 388, 488 A.2d 486.

When the language is unambiguous, we shall give effect to its plain meaning and not construe the contract any further. *ABC Imaging of Washington, Inc. v. The Travelers Indem. Co. of Am.*, 150 Md.App. 390, 397, 820 A.2d 628 (2003). If the language is ambiguous, however, extrinsic evidence may be considered. *Collier*, 327 Md. at 6, 607 A.2d 537; *Cheney*, 315 Md. at 767, 556 A.2d 1135; *Pac. Indem.*, 302 Md. at 389, 488 A.2d 486. The language used may be ambiguous if a reasonable layperson could infer two different meanings from it. *Collier*, 327 Md. at 6, 607 A.2d 537; *Ackerman*, 162 Md.App. at 5, 872 A.2d 110 (citing *Scherr*, 101 Md.App. at 695, 647 A.2d 1297). If, after considering extrinsic evidence, the ambiguity remains, or if no extrinsic evidence is presented, the remaining ambiguity will be ordinarily resolved against the insurer. *Collier*, 327 Md. at 6, 607 A.2d 537; *Aragona*, 281 Md. at 375, 378 A.2d 1346 (citations omitted).

Some courts have permitted an insured to recover mitigation expenses from an insurer providing first party property coverage, based on either an insured's common law duty to mitigate damages or an insured's contractual duty to mitigate damages. *See* 12 Couch on Insurance 3d § 178:10 (3d ed.2005) (citing *Witcher Constr. Co. v. Saint Paul Fire & Marine Ins. Co.*, 550 N.W.2d 1 (Minn.Ct.App.1996); *City Coal & Supply Co. v. Am. Auto. Ins. Co.*, 99 Ohio App. 368, 133 N.E.2d 415 (1954); *Travelers Indem. Co. v. Pollard Friendly Ford Co.*, 512 S.W.2d 375 (Tex.App.1974); *Curtis O. Griess & Sons, Inc. v. Farm Bureau Ins. Co. of Nebraska*, 247 Neb. 526, 528 N.W.2d 329 (1995)).

In *Curtis O. Griess & Sons, Inc. v. Farm Bureau Ins. Co. of Nebraska*, for example, the insured's livestock, which were infected by a virus, were covered by a first party coverage policy. 247 Neb. 526, 528 N.W.2d 329, 331 (1995). The policy covered "physical loss" to the livestock, and infectious disease was a covered cause. *Id.* Under the policy, the insured had a duty to incur reasonable and necessary expense to mitigate

damage to the "property," but the provision was silent with respect to the insurer's obligation to pay for the mitigation expenses. *Id.* at 333. The insured incurred $128,732.38 in veterinarian expenses to prevent further damage to the herd, including testing, treating, and managing the infections. *Id.* at 331. The court ruled that, although the insurance contract did not expressly state whether the insurer was liable for mitigation expenses, "expenses necessarily incurred in the course of mitigating damages are recoverable by an insured." *Id.* at 333–34 (citing various cases in other jurisdictions that hold the insurer must reimburse the insured for expenses necessarily incurred in the course of mitigating damages).

Unlike the courts in the cases just discussed, we do not base our conclusion on a common law duty to mitigate, and we do not hold that, when an insured has a duty to mitigate, the insured is always entitled to mitigation expenses, as a matter of law. That is not the issue before us. We base our conclusion on the language in the Policy before us. More than one meaning can reasonably be inferred from the word "consideration." It may mean that appellee would consider the measures taken and costs incurred in mitigating damage, and if the measures and costs were reasonable, necessary, and, in fact, mitigated the loss, appellee would pay for them. That is consistent with the language of the Policy that any such costs paid "in settlement of the claim" would "not increase the Limit of Liability." We certainly do not read it as unambiguously providing that appellee could arbitrarily and unreasonably decline to pay for costs that met the necessity and reasonableness requirement. We hold that "consideration," in the context before us, is ambiguous.

This case is distinguishable from *W.M. Schlosser Co., Inc. v. Ins. Co. of N. Am.*, 325 Md. 301, 600 A.2d 836 (1992).[6] In that

---

**6.** In *Schlosser*, the Court rejected the rationale that an insured was entitled to recover from an insurer mitigation expenses incurred in preventing a covered loss, when no covered loss had occurred, because permitting recovery in that situation would effectively rewrite the policy. Some of the cases cited in Couch, section 178:10, *supra*, fail to

case, W.M. Schlosser Co., Inc., which had taken measures to prevent the total collapse of earthen walls, after a subcontractor performed a negligent excavation, sued the insurer (INA) for expenses incurred in preventing the collapse. The policy in question was a comprehensive general liability policy. The costs were incurred to prevent damage that could have resulted in a claim against the insured, and which would have been covered. No claims were made, however.

■ By contrast, in our case, in a first party coverage context, with an express mitigation expense provision, it is undisputed that a covered loss had already occurred. The measures taken by appellants were to prevent *further* loss. The question here is whether snow removal costs were mitigation expenses within the meaning of the property coverage form, and *Schlosser* does not apply.[7]

■ In the case before us, it is undisputed that a covered loss occurred before the snow was removed, but there are other disputed material issues of fact. Appellants argue that Ms. Barefield, an authorized agent for appellee, authorized removal of the snow before the work was actually done and, at

---

distinguish between the situation in *Schlosser* and the situation before us.

7. Appellants also argue in their reply brief that the snow removal costs are covered under section A.5.g as an "extra expense." This section was not argued prior to the reply brief and thus is not properly before us. *See Beck v. Mangels*, 100 Md.App. 144, 149, 640 A.2d 236 (1994) (Md. Rule 8–504(a)(5) requires a party to present " 'argument in support of the party's position.' ... therefore, it is necessary for the appellant to present *and argue* all points of appeal in his initial brief ...") (emphasis original).

Even if this issue were properly before us, the Extra Expense provision does not apply in this case. Such a provision provides coverage for additional costs expended by the insured that are necessary to continue the operation of the business to the extent possible after it has suffered an insured loss. This provision typically covers extra compensation for employees, property obtained for temporary use, additional security, and cleanup of debris. *See, e.g., Travelers Indem. Co. v. Pollard Friendly Ford Co.*, 512 S.W.2d 375, 381 (Tex.App.1974); *Archer–Daniels–Midland Co. v. Phoenix Assurance Co. of New York*, 936 F.Supp. 534, 538 (D.Ill.1996). It does not envision coverage for costs incurred under the circumstances of this case.

least impliedly, agreed to pay for it. We cannot treat that as an undisputed material fact, however, based on our reading of the summary judgment papers. Additionally, even if there was such an agreement, whether the scope of the actual snow removal was necessary and effective in preventing further loss and whether the costs incurred were reasonable are disputed material facts. Therefore, we shall remand for a determination of fact with respect to these issues.

If it is determined that an authorized agent did authorize and approve the work to be performed by Security, acting as an agent of appellants, the ambiguity in the Policy would not have to be resolved. In that situation, appellee in fact determined that the work was necessary and reasonable, authorized it, and agreed to pay for it. The question whether the work was within the scope of the authorization and whether the costs were reasonable would still have to be resolved.

If it is determined that there was no prior valid authorization, the ambiguity would have to be resolved. The parties may present admissible extrinsic evidence to explain the ambiguity. If they do so, the court will resolve the ambiguity based on the evidence. If the parties do not present extrinsic evidence, the court will construe the provision against appellee. After resolving the ambiguity, the only issues will be whether the work was necessary and effective in preventing further loss and whether the costs were reasonable.

 We turn our attention to liability for attorney's fees and costs. If it is determined that appellee had no liability for snow removal costs, appellants are not entitled to attorney's fees and expenses. If it is determined that appellee was liable for snow removal costs, the following analysis is relevant.

 The property coverage form does not expressly provide a duty to defend the insureds or for payment of litigation fees and expenses, as part of a covered loss. Ordinarily, in the absence of a statute, rule, or contract expressly allowing the recovery of attorney's fees, a prevailing party in a lawsuit may not recover attorney's fees. *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 355 Md. 566, 590, 735 A.2d 1081 (1999)

(citations omitted). This is true whether the action seeking fees sounds in contract or tort.

■■■ An exception to that general rule is when an action is brought to enforce an insurer's obligations under third party liability provisions in a policy, and it is determined that there is coverage. *Id.* at 591, 735 A.2d 1081; *Cont'l Cas. Co. v. Bd. of Ed.*, 302 Md. 516, 537, 489 A.2d 536 (1985).

The exception does not apply, however, to an action against an insurer to enforce first party coverage. *Bausch & Lomb*, 355 Md. at 591, 735 A.2d 1081 (discussing *Collier v. MD–Individual Practice Ass'n, Inc.*, 327 Md. 1, 16–17, 607 A.2d 537 (1992)). In *Bausch & Lomb*, the insurer had issued comprehensive general liability policies. The Court of Appeals held that an endorsement to the policies created first party coverage, *id.* at 583, 735 A.2d 1081, which the insured enforced by litigation. Nevertheless, the insured could not recover attorney's fees. *Id.* at 592, 735 A.2d 1081.

In the case before us, appellants incurred attorney's fees in the defense of Security's claims and in enforcing appellee's alleged liability under the Policy. With respect to fees incurred in enforcing appellees' liability under the Policy, *Bausch & Lomb* makes it clear that, even if there was coverage for snow removal costs, appellants would not be entitled to recover. With respect to fees and expenses incurred in defending Security's claim, *Bausch & Lomb* did not resolve the issue because the claim before the Court was for fees incurred in pursuing the claim against the insurer.

Several Maryland appellate decisions, after stating the general rule that attorney's fees are not recoverable as damages, whether incurred in the litigation for which they are sought or outside of the litigation, have recognized exceptions. One of those exceptions has sometimes been called the "collateral litigation" exception. *Archway Motors, Inc. v. Herman*, 41 Md.App. 40, 44, 394 A.2d 1228 (1978).

The leading Maryland case cited to support this exception is *McGaw v. Acker, Merrall & Condit Co.*, 111 Md. 153, 73 A. 731 (1909). The *McGaw* Court stated that, when a party is

forced into litigation with a third party by the wrongful conduct of another, the innocent party may recover attorney's fees incurred in defending the action against it, from the party who engaged in the wrongful conduct. 111 Md. at 160, 73 A. 731. The claims in *McGaw* were tort claims, *see Acker, Merrall & Condit Co. v. McGaw,* 106 Md. 536, 68 A. 17 (1907) (a prior appeal), but the Court did not distinguish between contract and tort. Subsequent cases have recognized that the exception may be applicable in contract as well as tort actions. *See, e.g., Cont'l Cas. Co.,* 302 Md. at 537, 489 A.2d 536; *Archway Motors,* 41 Md.App. at 44, 394 A.2d 1228 (1978). In a contract action, however, "special circumstances" are required. *Harry's Thrifty Tavern, Inc. v. Pitarra,* 224 Md. 56, 63, 166 A.2d 908 (1961).

The Court, in *Bausch & Lomb,* relied on its prior decision in *Collier v. MD–Individual Practice Ass'n, Inc.,* 327 Md. 1, 607 A.2d 537 (1992). Interestingly, the *Collier* Court, in answering a certified question from federal court, recognized the *McGaw* exception for fees incurred in collateral litigation, but stated that it was not part of the question before it. *See* 327 Md. at 11 n. 1, 607 A.2d 537.

Courts in several other jurisdictions have similarly stated that a party has a right to recover attorney's fees incurred in collateral litigation. *See, e.g., Frommeyer v. L. & R. Constr. Co.,* 261 F.2d 879, 881 (3d Cir.1958) (applying New Jersey law); *H. Molsen & Co., Inc. v. Flowers,* 62 F.R.D. 14, 15 (D.Tenn.1973); *Fairway Builders, Inc. v. Malouf Towers Rental Co., Inc.,* 124 Ariz. 242, 603 P.2d 513, 529 (1979); *Aero Garage Corp. v. Hirschfeld,* 185 A.D.2d 775, 586 N.Y.S.2d 611, 612–13 (N.Y.App.Div.1992); *S & D Mech. Contractors, Inc. v. Enting Water Conditioning Sys., Inc.,* 71 Ohio App.3d 228, 593 N.E.2d 354, 363 (1991); *Owen v. Shelton,* 221 Va. 1051, 277 S.E.2d 189, 192 (1981).

We conclude that an insured may recover, as an element of damage in a contract action, attorney's fees and expenses reasonably incurred in defending an action against it, when initiation of the action by a third party was the natural

and probable consequence of an insurer's wrongful denial of a first party coverage claim. On remand, if it is determined that appellee was contractually bound to pay for some or all of the snow removal costs, damages may include the amount of fees and expenses reasonably incurred in the defense of Security's claim against appellants.

### *Liability coverage—third party coverage*

The liability coverage form imposed a duty to defend claims made against appellants. This duty exists when the claims are covered or potentially covered under the policy. *Aetna Cas. & Sur. Co. v. Cochran,* 337 Md. 98, 102–03, 651 A.2d 859 (1995). Under liability coverage, when the policy contains a duty to defend, an insured may recover not only fees and expenses incurred in defending a claim against it, but also in enforcing the insurer's obligations under the policy. This is an exception to the general rule. *Cont'l Cas. Co.,* 302 Md. at 537, 489 A.2d 536.

Appellants' contention, in essence, is that, regardless of whether a duty to defend would have existed if the Policy had contained only the liability coverage form, a duty to defend existed because snow removal costs were covered under the property coverage form, and the duty to defend extended to claims made because of a first party covered claim.

Even if it is determined that appellee would have been liable for snow removal costs under the property coverage form, appellee did not owe a duty to defend appellants with respect to Security's claims.

It is not unusual for policies to contain first party and third party coverages. There is no duty to defend contained either in the property coverage form or in any portion of the Policy that applies to the Policy as a whole.

The duty to defend is contained in the liability coverage form, under "business liability," and is limited to claims for

"damages" because of "property damage." "Property damage" is not a term used in the property coverage form,[8] and the snow removal costs were not "property damage" within the meaning of the liability coverage form, a defined term.

Even if the snow removal costs were within "property damage," the claims against appellants came within an exclusion. The liability coverage form excluded " 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Security and appellants entered into an express contract. The obligation and any liability by appellants to Security arose solely because of that agreement. As it turned out, the terms of the contract were such that appellants incurred no liability under the contract. That does not change the fact, however, that its obligation and potential liability were contractual in nature.[9]

**JUDGMENT VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

---

**8.** As discussed above, appellants contend that the snow removal costs were mitigation expenses or extra expenses.

**9.** Appellants rely heavily on *Johnson & Towers Baltimore, Inc. v. Vessel Hunter*, 824 F.Supp. 562 (D.Md.1992). In that case, Katski, the owner of a vessel, engaged Johnson & Towers to perform repairs on the vessel's engines. Katski then submitted a claim for the repairs to his insurer. Johnson & Towers sued Katski when Katski did not pay, and Katski filed a third party claim against his insurer. At a non-jury trial, the court determined that the damage to the vessel that needed repair had been caused by the negligence of non-parties and that the loss was covered under the policy. 824 F.Supp. at 568–70. The court also determined that the insurer owed a duty to defend Katski and thus awarded attorney's fees to Katski, those incurred in defending the claim and those incurred in enforcing coverage. *Id.* at 571–73. The duty to defend was based on policy language that was different from the language in the policy before us. *See Johnson & Towers Baltimore, Inc. v. Vessel Hunter*, 802 F.Supp. 1343, 1352 (D.Md.1992) (a prior decision in the same case). Having concluded there was no duty to defend in the case before us, the *Johnson & Towers* decisions are inapposite.